The Wabash, St. Louis and Pacific Railway Company

*v.*

Louisa J. Shacklet, Adm'x.

*Filed at Mt. Vernon January 31, 1883.*

1. Pleading and Evidence—*immaterial averment.* In an action by an administrator to recover damages for causing the death of the intestate by negligence, the averment that the deceased, at the time of the accident, was exercising due care and diligence, whether necessary or not, when traversed by the general issue can not be treated as an immaterial allegation, and must be sustained by the evidence.

2. Negligence—*contributory negligence—instructions.* Where the want of negligence on the part of one killed by a collision of two railroad trains is averred and put in issue, it is error for the court, in instructions, to ignore this issue, where none others are given on the other side to cure such omission.

3. If, in such case, there was no evidence whatever of the negligence of the deceased, the judgment in favor of the plaintiff ought not to be reversed for such faulty instructions; but where the proof shows that a shipper of stock took his position upon the front of an engine, and while in such situation, on a colliding of trains, was struck and injured, it can not be said the evidence fails to show any negligence on his part.

4. Although a shipper of stock on a railway train may be rightfully upon any part of such train, as regards such company which is carrying his stock to a stock yard, still such right will not relieve him from the duty of using due care to protect himself from injury from another company's train colliding with the same, where such other company is sought to be held liable for his death occasioned by the collision.

5. Where a shipper of stock, in going into stock yards, in company with five or six other persons, rides on the front of the engine, all of whom except him, seeing a backing train on the same track, jump off, and thus escape injury, but he does not, and is killed on a collision of the trains, the question

of negligence arising on his failure to jump off and save himself is a question of fact, which should be submitted to the jury, under proper instructions, in an action to recover for his death, and an instruction ignoring this, not cured by others, is erroneous.

6. Same—*liability when injury is caused by the negligence of two railroad companies.*  Where a passenger on a railway train is injured by the mutual negligence of the servants of the company on whose train he is rightfully traveling, and of the servants of another company with whom he has no contract, there being no fault or negligence on his part, he or his personal representative may maintain an action against either company in default, and will not be restricted to an action against the carrier company on whose train he was traveling.

7. Action—parties—*election to sue all or any of several wrong-doers.*  Where one has received an actionable injury at the hands of two or more wrong-doers, all, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and the plaintiff in such case has his election to sue all jointly, or to sue each or any one of the wrong-doers.

8. Same—*by foreign administrator.*  A foreign administrator may maintain an action in this State against a railway company to recover damages for causing the death of the intestate through negligence.

9. Same—*nature of action for injury.*  Where a passenger on a railway train is injured by a collision of his train with another, through the mutual negligence of both companies, he exercising due care, he can not maintain an action *ex contractu* against the company owning the rival train; but this furnishes no reason why he may not maintain an action *ex delicto* against it.

10. Passenger—*entitled to protection against injury from all persons.*  The law extends to a passenger on a railway train or other public conveyance the same protection against fraud, force and negligence, that it does to any one else.  By assuming the relation of a passenger he neither expressly nor impliedly waives that indemnity against injury which the law gives him.

11. Instructions—*when one does not cure error in another.*  Where the court gives two instructions, the one correct, but the very reverse of the other, which is erroneous, the correct instruction will not cure the error in the other, as the jury have no means of determining which is correct.

12. Personal rights—*defined and distinguished.*  The general right of a citizen to security of life and limb, and indemnity against personal injuries occasioned by the negligence, fraud or violence of others, is a right *in rem*, as distinguished from a right *in personam*, growing out of contract.

Appeal from the Appellate Court for the Fourth District; —heard in that court on appeal from the City Court of East St. Louis; the Hon. Charles T. Ware, Judge, presiding.

Mr. G. B. Burnett, and Mr. Frank W. Burnett, for the appellant:

The judgment should be reversed because plaintiff's instructions ignore the question of ordinary care by the deceased. *Chicago and Northwestern R. R. Co.* v. *Dimmick,* 96 Ill. 42; *Chicago, Burlington and Quincy R. R. Co.* v. *Harwood,* 80 id. 88; *Chicago, Burlington and Quincy R. R. Co.* v. *Payne,* 49 id. 499; *Chicago, Burlington and Quincy R. R. Co.* v. *Lee,* 60 id. 502; *Chicago and Northwestern R. R. Co.* v. *Simonson,* 54 id. 504; *Illinois Central R. R. Co.* v. *Moffit,* 67 id. 431; *Illinois Central R. R. Co.* v. *Herrington,* 83 id. 510; *Chicago and Alton R. R. Co.* v. *Pennell,* 94 id. 42; *Wabash Ry. Co.* v. *Hunt,* 91 id. 406; *Chicago Packing Co.* v. *Tipton,* 87 id. 547; *Illinois Linen Co.* v. *Hough,* 91 id. 63; *Stratton* v. *Central Horse Ry. Co.* 95 id. 25.

As the deceased was a passenger of the transit company, whose negligence contributed to the injury, the plaintiff can not recover from appellant unless the negligence of the transit company was slight in comparison with that of appellant. *City of Joliet* v. *Seward,* 86 Ill. 406; *Toledo, Wabash and Western Ry. Co.* v. *Miller,* 76 id. 278; *Toledo, Wabash and Western Ry. Co.* v. *Grable,* 88 id. 443; *Lockhart* v. *Lichtenthaler,* 46 Pa. St. 151; *Lake Shore and Michigan Southern R. R. Co.* v. *Miller,* 25 Mich. 274; *Smith* v. *Smith,* 2 Pick. 621; *Houfe* v. *Fulton,* 29 Wis. 296; *Prideaux* v. *Mineral Point,* 43 id. 513; *Forkstown* v. *King,* 84 Pa. St. 230; *Payne* v. *Chicago Ry. Co.* 39 Iowa, 525; *C. C. & C. R. R. Co.* v. *Terry,* 8 Ohio St. 570; *Puterbaugh* v. *Reason,* 9 id. 484; *Brown* v. *New York Central R. R. Co.* 31 Barb. 335; *Thorogood* v. *Bryan,* 65 Eng. C. L. 114; *Catlin* v. *Hill,* id. 123; *Child* v. *Hearn,* L. R. 9 Exch. 176; Wharton on Negligence, sec. 395; Cooley on Torts, 684, 140.

It was error to instruct the jury that if both companies were negligent, the plaintiff might recover from either. *Yeazel*

v. *Alexander*, 58 Ill. 254; *Chicago and Northwestern Ry. Co.* v. *Scates*, 90 id. 586; Cooley on Torts, 133, 140; Wharton on Negligence, sec. 395.

Appellee, as foreign administratrix, is not entitled, under the statute, to maintain this action. Hurd's Stat. 1880, chap. 3, sec. 42; *People* v. *Peck*, 3 Scam. 118; *Judy* v. *Allington*, 11 Ill. 211; *City of Chicago* v. *Major*, 18 id. 349; *Illinois Central R. R. Co.* v. *Cragin*, 71 id. 177.

Mr. Waldo P. Johnson, and Mr. M. Millard, for the appellee:

There being no doubt as to the defendant's negligence, the giving or refusing of instructions working no injury will not reverse. *Andes Ins. Co.* v. *Fish*, 71 Ill. 620; *Schwartz* v. *Schwartz*, 26 id. 81; *Ryan et al.* v. *Donnelly*, 71 id. 101.

Errors in instructions, where the verdict does justice, are no ground for a reversal. *Potter* v. *Potter*, 41 Ill. 81; *Jarrard* v. *Harper*, 42 id. 457; *Murray* v. *Haverty*, 70 id. 318; *White* v. *Stanbro*, 73 id. 575; *Hall* v. *Sroufe*, 52 id. 421; *Strohm* v. *Hayes*, 70 id. 41; *Hubner* v. *Feige*, 90 id. 208.

As to whether the negligence of a third party can be imputed to the plaintiff, and defeat a recovery against one whose failure of duty was the proximate cause of the injury, is not beyond dispute. The better doctrine seems to be to limit this rule to cases where there is such a personal relation as fairly to make the plaintiff responsible for the other's conduct. *Dyer* v. *Erie Ry. Co.* 71 N. Y. 288; *Chapman* v. *New Haven R. R. Co.* 19 id. 341; *Bennett* v. *New Jersey R. R. Co.* 36 N. J. 225; *Danville Turnpike Co.* v. *Stewart*, 2 Metc. (Ky.) 119; *Louisville R. R. Co.* v. *Case's Admr.* 9 Bush, 728; Shearman & Redfield on Negligence, 48; Wharton on Negligence, sec. 395.

A foreign administrator may maintain the action. *Illinois Central R. R. Co.* v. *Cragin*, 71 Ill. 177.

Mr. Justice Mulkey delivered the opinion of the Court:

This is an appeal from the Appellate Court for the Fourth District, affirming a judgment of the City Court of East St. Louis, rendered at its August term, 1881, against the Wabash, St. Louis and Pacific Railway Company, the appellant, for the sum of $3500, in an action brought by Eliza J. Shacklet, the appellee, as administratrix of Elijah E. Shacklet, her late husband, to recover damages for injuries received by him in a railway collision, resulting in his death, charged to have been caused by the negligence of the appellant.

The injury complained of occurred in East St. Louis, on a short line of railroad belonging to the St. Louis National Stock Yards, and was caused by a collision of two trains of cars, belonging, respectively, to the appellant and the Union Railway and Transit Company. The road on which the collision occurred connected the stock yards with the various lines of railway running through or terminating at East St. Louis, and was open alike to the free and common use of all railway companies for the purpose of shipping live stock to or from the stock yards. This connecting line of road belonging to the stock yards company consists of two main tracks, connected at or near the stock yards by necessary switches and turn-outs, so that with proper care and precaution collisions between incoming and outgoing trains might readily be avoided. The track on which the collision occurred is called the "wall track," and the evidence tends to show that trains going in with stock were entitled to the right of way on this track. At the time of the accident the transit company was pulling a train into, and the appellant was pushing one out from, the stock yards on this wall track, both trains being loaded with live stock, but owing to a sharp curve in the track, and some obstructions on the line of the road, those having the trains in charge did not discover their close proximity till it was too late to avoid the collision.

Shacklet, at the time, was riding on the engine of the transit company's train, and a number of the cars belonging to it were loaded with his stock.

Kay, a witness on behalf of appellee, in giving an account of the affair, says: "There is a curve in the track going around the sheep house, near the stock yards. Shacklet was sitting right by me on the engine. I jumped off just as the conductor said 'look out.' There were six or seven persons riding on the engine. I was standing on the foot-board, and we all jumped off except Shacklet, when we saw the Wabash train backing towards us. The tender of the bridge engine slopes downward, and the men were sitting on this slope on the front end of the tender. I had just time to jump off before the collision. The Wabash train was about fifteen yards from us, backing towards us, when I saw it. The transit train was going about five miles an hour, and the Wabash train pretty lively. The Wabash had about eighteen cars, and was pushing them towards us. Could not see the Wabash train sooner on account of the curve, which is very short, and the sheep house also obstructed the view. The Wabash train was moving about twelve miles an hour when the collision occurred. When the trains came together the car of the Wabash slid upon the sloping end of the transit engine, and caught Shacklet. He lived about twenty minutes. I saw none of the Wabash employés on the train. I saw a stock shipper standing on top of the Wabash train as it came around the curve. He was standing near the end. The transit train was going round to the chutes to unload stock, and the Wabash train was coming from the chutes at the time."

On the trial of the cause, the court, against the objections of the appellant, gave to the jury, among others, the following instructions:

"3. If the jury believe, from the evidence, that the train of defendant was negligently and carelessly backed on the

stock yards track, and that said train collided with an engine and train of the transit company, and Shacklet was rightfully riding on the last mentioned train, on the engine, and his death was caused by said collision, the jury will find for plaintiff, even if they further believe, from the evidence, that there was also negligence on the part of those in charge of the transit train.

"4. If the jury believe, from the evidence, that the train of defendant was negligently and carelessly backed on the stock yards track, and that said train collided with an engine of the transit company on the same track, and caused the death of Shacklet, who was rightfully riding on the transit engine, then the jury will find for the plaintiff."

The giving of these instructions is assigned for error. We are unable to perceive upon what theory they can be sustained, unless the fact of appellee's intestate being carried on the transit company's train in the manner we have seen, as matter of law relieved him from all obligation to exercise ordinary care and diligence to avoid the injury complained of, and we are aware of no authority which sanctions such a position. The declaration in this case expressly alleges that "the said Elijah E. Shacklet was then and there riding on one of the engines and trains of the said Union Railway and Transit Company, along and on said track, with due care and diligence," etc. The cases are not in accord as to whether the plaintiff was bound to make this averment in order to entitle him to recover. According to many respectable authorities the plaintiff's own negligence is matter of defence, and properly comes from the other side, and hence the plaintiff is not bound to negative it in his declaration; and perhaps this is the better rule, and is more in consonance with the philosophy of pleading and the general analogies of the law. Yet it can not be denied that other respectable authorities maintain the contrary view, and precedents of declara-

tions in cases of this kind are undoubtedly to be found which contain the averment that the plaintiff, at the time of the alleged injury, was exercising due care.  But whatever may be the true rule in this respect, it must be conceded that when the declaration contains such an averment, and it is traversed by the defendant's plea, as was done in this case, the issue thus formed can not be treated as an immaterial one.  By the defendant's plea of not guilty, this averment in the declaration was put directly in issue, and upon the evidence before the jury we think it was error in the trial court, in giving the law of the case to the jury, to ignore this issue altogether, as it certainly did by the instructions in question.

If the court had, in some other instruction given to the jury, stated, in clear and unequivocal terms, there could be no recovery in the case unless it appeared, from the evidence, that the deceased himself, at the time of the alleged injury, was exercising due care, it might then well be contended the omission in the two instructions complained of was cured, for in that case the instructions, when considered as a whole, would have properly laid down the law.  But such is not the case here.  Indeed, it is not claimed there is any other instruction that relieves the two given of the objectionable feature in question.  If there was no evidence whatever tending to show a want of care on the part of the plaintiff, it might then be said, notwithstanding the instructions complained of, the judgment should still be for the plaintiff, and consequently the case ought not to be reversed on the ground stated; but in the light of the facts before us we are unable to say this.  If we assume the deceased, without any inquiry as to the manner in which the stock yards road was used, took a position on the front of the engine of the transit company's train, (the most dangerous one, as it seems to us, he could have selected if he had any choice in the matter,) for the purpose of being carried out to the stock yards, his conduct

in the premises certainly can not be said to be so absolutely free from all blame as to take it from the consideration of the jury altogether, as was, in effect, done by these instructions. If, on the other hand, he was informed, or otherwise had knowledge of the manner in which the road was used by the various companies doing business on it, he was bound to know the transit train was in more or less danger of colliding with some outcoming train, in which case his position on the front of the engine was most perilous indeed, for the evidence shows that it was not an infrequent thing for trains to come in collision with each other. One of the witnesses, speaking of the manner in which these tracks were used, says: "There are nearly always trains there. They often have regular bucking matches there, to see who can hold the track. * * * Trains do not always keep out of each other's way. They generally move slow, and the one who has the heaviest engine will push the other one out of the way."

It may be supposed the objection to these instructions in the respect stated is cured by the limitation contained in them which tells the jury if they find, from the evidence, "Shacklet was rightfully riding on the transit engine," etc. But we do not think so. The instruction in this respect was subject to misconstruction. The jury might have supposed, that as a shipper of stock he had the liberties of the whole train, and that he had a right, therefore, to take any position on it, however dangerous. His right to ride upon the train did not relieve him from the duty of using such care as was reasonably necessary to protect himself from injury. He was under no legal obligation to adopt that mode of conveyance to the stock yards, and he should not have done so if it was really hazardous, although, as between him and the carrier company, he had a right to go there in this manner,— at any rate, this was clearly matter for the consideration of the jury, and the instructions practically took it from them.

Again, it appears, as we have already seen, there were some five or six other persons riding on the engine of the same train with the deceased, all of whom except him, on seeing the backing train of the appellant, jumped off, and thus escaped injury. Now, whether the failure of the deceased to escape from the train in like manner was an act of negligence on his part, was clearly a question for the jury, and should not, in effect, have been withdrawn from its consideration, as was done by the instructions in question. Indeed, when all these facts and circumstances are considered in connection, we have no hesitancy in holding they were sufficient to require the question of the plaintiff's own care and diligence to be submitted to the jury, under proper instructions, and this not having been done, the Appellate Court should have reversed the judgment of the trial court for that reason.

It is also contended by appellant's counsel, that where, in an action like this, a passenger on a railway, or his legal representatives, seek to recover damages occasioned by the colliding of two trains belonging to different companies, and it appears the collision was caused by the contributory negligence of the servants of both companies in the management of their respective trains, however free such passenger may have been from any contributory negligence himself, he or his legal representatives can only maintain an action against the company upon whose train he was a passenger. Assuming this to be the law, had there been no instruction given to the jury laying down a contrary rule, we might content ourselves by saying the affirmance of the judgment of the trial court by the Appellate Court conclusively negatives the charge of contributory negligence on the part of the transit company. But such is not the case. By appellee's first and second instructions the court in effect told the jury, that in such cases where the collision is caused by the mutual negligence of the servants of both companies, and the passenger himself is

without fault, he or his legal representatives may neverthe-
less maintain an action against either company. It is true
the court, by appellant's third instruction, as we understand
it, lays down the very reverse of this proposition as the law
governing the case; but if the rule, as stated in appellee's
first and second instructions, is not correct, it is quite clear
the error is not cured by the giving of appellant's third in-
struction, for, under the circumstances, the jury had no
means of determining which set of instructions was right.
So by the appellant's exception to appellee's first and second
instructions the question is directly presented, whether a pas-
senger on one train can maintain an action against the owner
of another train on account of injuries received in a collision
between the two, caused by the mutual negligence of the ser-
vants in charge of both trains, where it affirmatively appears
such passenger acted with due care, and in no way contrib-
uted to the result. The courts of England and of Pennsyl-
vania, and possibly others to which our attention has not
been called, have answered this question in the negative,
while the courts of New York, New Jersey and Kentucky
answer it the other way. Among the text-writers, Shearman
& Redfield, Wharton, and Thompson, all place themselves
in line with the latter courts in holding the action will lie.
*Dyer* v. *Erie Ry. Co.* 71 N. Y. 228; *Chapman* v. *New Haven
R. R. Co.* 19 id. 341; *Bennett* v. *New Jersey R. R. Co.* 36
N. J. 225; *Danville Turnpike Co.* v. *Stewart*, 2 Metc. (Ky.)
119; *Louisville R. R. Co.* v. *Case's Admr.* 9 Bush, 728;
Shearman & Redfield on Negligence, 48; Wharton on Negli-
gence, sec. 395; Thompson on Carriers of Passengers, 284.

The leading English case denying the right of action in
such cases, is *Thorogood* v. *Bryan*, 8 C. B. 131. In this case
the injury complained of was caused by the collision of two
rival omnibuses, occasioned by the mutual negligence of the
drivers. Of course the same principles apply to collisions
of this kind that are applicable to railway collisions, under

like circumstances.    It was said by Maule, J., in that case:
"Although I, at one time, entertained a contrary impression,
I incline to think that, for this purpose, the deceased must
be considered as *identified* with the driver of the omnibus in
which he voluntarily became a passenger, and that the neg-
ligence of the driver was the negligence of the deceased.    If
the deceased himself had been driving, the case would have
been free from doubt.    So, there could have been no doubt
had the driver been employed to drive him, and no one else.
On the part of the plaintiff it is suggested, that a passenger
in a public conveyance has no control over the driver.    But
I think that can not, with propriety, be said.    He selects the
conveyance.    He enters into a contract with the owner, whom,
by its servant, the driver, he employs to drive him.    If he is
dissatisfied with the mode of conveyance, he is not obliged to
avail himself of it.    According to the terms of his contract he
unquestionably has a remedy for any negligence on the part
of the person with whom he contracts for the journey."    We
have made this very copious extract in order that the rea-
sons on which the English rule was originally founded may
distinctly appear, with the view of showing, from subsequent
English cases, and the Pennsylvania cases which follow them,
that while the rule itself has, on the principle of *stare decisis,*
since been adhered to, with occasional manifest indications
of disfavor on the part of some of the judges, yet the reasons
upon which it was originally founded, as above set forth, have
been almost entirely repudiated.

In *Lockhart* v. *Lichtenthaler,* 46 Pa. St. 151, the Supreme
Court of Pennsylvania, in adhering to the English rule as
announced in *Thorogood* v. *Bryan, supra,* said:  "I do not
think, however, the *rationale* of the principle is satisfactorily
expounded in *Thorogood* v. *Bryan,* viz., the identity of the
passenger with his own vehicle.    I would say the reason for
it is, that it better accords with the policy of the law to hold

the carrier alone responsible in such circumstances, as an incentive to care and diligence."

In *Armstrong* v. *Lancashire R. R. Co.* 10 Exch. 47, a late English case, Pollock, B., in referring to *Thorogood* v. *Bryan, supra,* said: "The only difficulty in it arises from the use of the word 'identified,' in the judgment. If it is to be taken that by the word 'identified,' is meant that the plaintiff, by some conduct of his own, as, by selecting the omnibus in which he was traveling, has acted so as to make the driver his agent, this would sound like a strange proposition, which could not be entirely sustained. But what I understand it to mean is, that the plaintiff, for the purpose of the action, must be taken to be in the same position of the omnibus, or his driver. This is illustrated by the case of *Waite* v. *Northwestern Railway,* where it was held that a child, with regard to contributory negligence, was identified with its grand-mother who accompanied it, although it was impossible to say there was any selection of the companion, or any act of volition on the part of the child."

This hasty and limited reference to some of the cases recognizing the English rule, clearly shows that the views, even of the English judges themselves who have undertaken to expound it, are not at all in accord on the subject. Maule, J., in the *Thorogood case,* for the purpose of the action identified the passenger with the driver of the coach in which he was riding, on the ground that by voluntarily contracting with the owners for the vehicle, to be driven by a particular driver, the latter thereby became the agent of the passenger in such a sense as to defeat a recovery against the owners of the rival omnibus, where it appeared the driver was guilty of contributory negligence. Pollock, B., in the subsequent case of *Armstrong* v. *Lancashire R. R. Co. supra,* as we have just seen, wholly repudiates the agency theory, and characterizes it as "a strange proposition." He, however, adheres to the idea of the identity of the passenger and driver

for the purposes of the action, for to yield this would be to abandon the rule altogether.   In speaking of the expression "identified," as used in the *Thorogood case*, he says:   "What I understand it to mean is, that the plaintiff, for the purpose of the action be taken to be in the same position as the owner of the omnibus, or driver,"—that is, for the purposes of the action the negligence of the driver or owner must be attributed to the passenger or his legal representatives who seek redress.   This is but a mere statement of the rule, and does not throw a particle of light on the real ground of contention between those who oppose and those who favor it.   The important inquiry is, what, if any, good reasons have been or can be urged in favor of the rule?   It is manifest the agency theory can not be maintained, for to do so, if logically adhered to, would be to deny the passenger all right of action whatever against the owners of either conveyance, for if the driver, in the case of an omnibus or other vehicle, or the servants of the company, in the case of a railway train, are to be regarded as the mere agents of the passenger, their negligence of course would, in law, be simply the negligence of the passenger, and to permit him to recover from the owner of either conveyance, would be to allow a plaintiff to recover from another on account of his own negligence, which, of course, all must concede could not be done.   For this and many other reasons that might readily be suggested, the theory that the servants in charge of a public conveyance are in any sense the agents of a mere passenger, may be regarded as exploded.

The agency theory having been repudiated by Pollock, B., as we have just seen, that distinguished judge sought to fortify the rule in question by its supposed analogy to the principle which, in some cases, denies a right of action to a person incapable of taking care of himself, as, an infant, idiot, or the like, for an injury caused in part by the contributory negligence of one having such incapable person in charge.

Whether the rule referred to exists to the extent claimed, it is not necessary for us to stop to inquire, for, conceding it does, we (fail to) perceive but little analogy between the two classes of cases. As an infant of tender years is incapable of perceiving or of avoiding danger, and is unconscious of the probable consequences of its own acts, the law could not consistently, and does not, attribute negligence to it. In contemplation of law, and in fact, it is incapable of acting for itself, and is wholly irresponsible. Inasmuch, therefore, as it is in an entirely helpless condition, the law has wisely entrusted its care and custody to others, whose duty it is to exercise for it that prudence and discretion which it is incapable of exercising for itself, for the purpose of protecting it, not only against the wrongs of others, but also from the consequences of its own improvident acts. This provision of the law is humane in its character, and highly essential to the well-being of the infant itself. Among the duties which the law thus imposes upon those having the custody or charge of an infant, is that of preventing it from going into places of danger, and thereby exposing itself to irreparable injury, which, if done by an adult, would be gross negligence. Since those having the custody or charge of an infant are bound to act and judge for it in all matters of this kind, as it is wholly incapable of judging or acting for itself, it is clear the infant is directly represented by those thus acting for it, and any negligence or want of care on their part in the discharge of this duty should, in justice, (as it is, so far as third parties are concerned,) be treated as the negligence of the infant itself,—and such is the settled doctrine of the courts. But with a sane person, who has arrived at the years of discretion, the case is quite different. He must, at all times and under all circumstances, judge and act for himself in the varied relations of social and business life, and if he, without fault on his part, has been injured through the mutual negligence of two or more persons, he has a right of action against either

of the wrong-doers, unless it shall appear he has, either expressly or by implication, authorized the injury complained of,—and, so far as his right of recovery is concerned, it makes no difference whether the injury occurred in an omnibus, or in the passenger coach of a railway, or elsewhere. Nor is the right of recovery in such case at all affected by the fact that the parties whose negligence caused the injury were the owners of rival omnibuses or railway trains, in or upon one of which the plaintiff was a passenger. The law extends to a passenger in a public conveyance the same protection against fraud, force and negligence, that it does to any one else, and by assuming the relation of a passenger he neither expressly nor impliedly waives that indemnity against injury which the law thus throws around him.

In some of the cases favoring the English rule, one of the reasons assigned why the action should be confined to the carrier company is, that the latter company, by its express or implied contract with the passenger, is under special and additional obligations to him to use due care, and carry him safely, whereas the other company has entered into no such engagement with him. While this affords a conclusive reason why an action *ex contractu* will not lie against the other company, it does not, in our judgment, furnish the slightest reason why an action *ex delicto* may not well be maintained against such other company for a tort committed by it, independently of a contract, which has resulted in an injury to the plaintiff. One of the primary rights of the citizen, sanctioned by the positive law of the State, is security to life and limb, and indemnity against personal injuries occasioned by the negligence, fraud or violence of others. This is a right which avails against all persons whomsoever, and is distinguished from a right which avails against a particular individual or a determinate class of persons. The former is called a right *in rem*, the latter a right *in personam*. The former class of rights exists independently of contract; the

latter frequently arises out of contract. These two kinds of rights may exist in the same person at the same time, and though having no connection with each other, may look to the accomplishment of the same object; yet the possession of one does not affect duties and obligations relating to the other. For instance, no one has a right to assault me. This indemnity which the law affords me, avails against mankind generally, and is therefore a right *in rem*. This right in me imposes a corresponding duty upon all persons whomsoever to refrain from assaulting me; but I may, if I think proper, add to this general security which the law affords me, by entering into a contract with some determinate person to not only refrain from assaulting me himself, but also to indemnify me against all damages resulting from the assaults of others. My right, under this contract, is a right *in personam*, and consequently avails only against the person with whom I made the contract, and although it has for its object the accomplishment of the same end my right *in rem* has, namely, indemnity against assaults upon my person, nevertheless both rights exist in me at the same time, wholly independent of each other. Now if, under the circumstances supposed, I should be assaulted by a stranger, resulting in damages, there is no question but that I might maintain an action *ex contractu* against the party who specially contracted with me to indemnify me against such assaults. This action would be based upon the breach of my right *in personam*. But by the assault my right *in rem* was also violated, and there is no question but that an action of trespass would lie against my assailant for its violation, and a plea in such action setting up the fact that I had a contract with a third party indemnifying me against all such assaults, would hardly stand the test of a demurrer. So in the present case, appellee's intestate had a right *in rem*, or a general right, which entitled him, if free from fault himself, to be protected and indemnified against injuries resulting from the negligence of all per-

sons whomsoever, including the appellant, and the fact that the transit company may have specially or impliedly contracted with him for such indemnity on his becoming a passenger on its train, is no answer to an action brought against the appellant for its own negligence.

The Supreme Court of Pennsylvania, as we have already seen, repudiating both the *agency* and *identity* theories, maintains the English rule, on the ground "it better accords with the policy of the law to hold the carrier alone responsible in such circumstances, as an incentive to care and diligence." We confess we are unable to perceive the force of this argument, for, conceding that to hold the carrier of the plaintiff or his intestate alone responsible would have the tendency claimed, yet to relieve the other guilty party from all responsibility whatever, would have just the contrary effect, so that whatever was gained in one direction would be lost in the opposite direction.

Considering the question, then, in the light of public policy, we are of opinion the public interests will be best subserved by adhering strictly to the long and well established principle that where one has received an actionable injury at the hands of two or more wrong-doers, all, however, numerous, are severally liable to him for the full amount of damages occasioned by such injury, and the plaintiff in such case has his election to sue all jointly, or he may bring his separate action against each or any one of the wrong-doers. To sanction a departure from this fundamental principle in the law of torts, would create an anomaly in the law not demanded by justice, convenience or public policy.

It is further urged in some of the cases, that in collisions of this kind there is no concert of action between the servants of the two companies,—that each set of servants is acting independently of the other, and in furtherance of opposing purposes, and hence there can be no joint liability between the two companies. However this may be, the present action

is not brought against the companies jointly, hence the question mooted is not before us, and we deem it proper, therefore, to decline any discussion of it.   Whatever may be the proper solution of this question, it can not at all affect the right of action in the present case.

It is finally objected, that under our statute the plaintiff, who is a foreign administrator, is not authorized to bring this action,—that by a fair construction of the different provisions of the statute relating to the subject, resident administrators alone are authorized to sue.   While this view of the matter is plausible, and not without force, yet we are unable to give our adhesion to it.   Upon a careful consideration of the question, we are of opinion the view taken of it by the Appellate Court is the correct one, and that the action is therefore well brought by the administrator.

For the error indicated, the judgment of the Appellate Court is reversed, and the cause remanded to that court, with directions to reverse the judgment of the City Court of East St. Louis, and remand the cause for further proceedings in conformity with the views here expressed.

*Judgment reversed.*