## Chicago Transit Co. v. Rose Campbell, Adm'x.

1.  NAVIGABLE WATERS—*Sovereignty Over Land Covered by Tide Waters Within the Limits of the Several States.*—The ownership of and dominion and sovereignty over lands covered by tide waters within the limits of the several states belong to the respective states within which they are found.

2.  SAME—*Same Rule Applies to Ownership of Lands under the Navigable Waters of the Great Lakes.*—The same doctrine as to the dominion and sovereignty over and ownership of lands under the navigable waters of the great lakes applies which obtains at the common law as to the dominion and sovereignty over and ownership of lands under tide waters on the borders of the sea, and the lands are held by the same right in the one case as in the other and subject to the same trusts and limitations.

3.  SAME—*Limit of Territorial Jurisdiction of a Nation Over Tide Waters.*—As between nations, the minimum limit is a marine league from the coast, and within these limits a state of the Union can define its boundaries on the sea and extend its sovereignty and jurisdiction to all places within such territorial limit.

4.  BOUNDARIES—*Between Canada and United States.*—By the treaty of September 3, 1783, between Great Britain and the United States, the boundary line in Lake Huron between the two countries was declared to lie "through the middle of said lake."

5.  ACTIONS—*For Death by Negligent Act Committed on the High Seas Within the Jurisdiction of a State.*—When a negligent act causing death occurs on the high seas, within the jurisdiction of a state, the laws of that state governing such actions are applicable.

6.  SAME—*Foreign Administrator May Maintain Action to Recover Damages for Death of His Decedent.*—A foreign administrator may maintain an action in this state to recover damages for negligently causing the death of his decedent.

7.  INSTRUCTIONS—*That the Mere Fact of a Collision Between a Steamship and a Sailing Vessel Raises a Presumption of Negligence, Erroneous.*—An instruction that if the jury find from all the evidence that the steam vessel collided with the sailing vessel then the burden is upon the steam vessel to show a sufficient reason for such collision, is

Chicago Transit Co. v. Campbell.

erroneous.  The presumption of negligence on the part of the steamer arises not from the mere collision; it must also appear that it did not keep out of the way of the sailing vessel.

8.  SAME—*As to Burden of Proof.*—An instruction that the burden of proof is upon the plaintiff to establish her case by a preponderance of the evidence, and that if the jury believe that a preponderance of the evidence is with the defendant, or if the jury find that the evidence is equally balanced, so that they can not determine whether the preponderance lies with the plaintiff or with the defendant, then they must find the issues for the defendant, is proper and should be given.

9.  ADMIRALTY LAW—*When It Is the Duty of a Steam Vessel to Keep Out of the Way of a Sailing Vessel.*—The rules governing navigation on great lakes, as established by act of congress, require a steam vessel to keep out of the way of a sailing vessel, when such vessels are proceeding in such direction as to involve risk of collision.

10.  SAME—*Jurisdiction Where Collision Occurs on Lake Huron, Eight Miles from the Michigan Shore.*—In an action for death by negligent act occurring in a collision on Lake Huron, eight miles from the Michigan shore, the laws of Michigan giving a right of action for death caused by an alleged wrongful act are applicable.

11.  FELLOW-SERVANTS—*Doctrine Does Not Apply Where Suit is Not Against the Common Master.*—Where a suit is not against the common master but against a third person, the doctrine of fellow-servants has no application.

12.  WORDS AND PHRASES—*Territory Defined.*—Territory, is the extent or compass of land and the waters thereof within the bounds of, or belonging to, the jurisdiction of any sovereign, state, city or other body. —Century Dictionary.

**Trespass on the Case.**—Death from negligent act occurring on the high seas.  Error to the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding.  Heard in the Branch Appellate Court at the October term, 1902.  Reversed and remanded.  Opinion filed October 9, 1903.  Opinion revised and refiled November 10, 1903. Rehearing denied November 10, 1903.

Defendant in error brought suit to recover for the death of John J. Campbell, who lost his life in consequence of a collision between the schooner "Typo," upon which he was serving as a seaman, and the steamer "W. P. Ketcham," owned by plaintiff in error.  Defendant in error recovered a judgment of $5,000, from which this writ of error is prosecuted.

The collision occurred upon Lake Huron during a dark night at about 4:30 o'clock A. M.  The sky was cloudy, but there was neither fog nor mist.  It is claimed in behalf of

defendant that the schooner displayed a torch or flare light several times before the collision, but that the steamer disregarded the signals, approached at full speed and struck the schooner on the port side between the main and mizzen rigging, about thirty feet forward of the stern, cutting into the schooner so that she filled and sank. Several of her crew were lost, including John J. Campbell, for whose estate this action is brought.

In behalf of the plaintiff in error there is evidence tending to show that the steamer's mate and lookout discovered a torchlight on what proved to be the ill-fated schooner, two or three points off the port bow of the steamer and a half or three-quarters of a mile away; that no other light appeared upon the schooner, and it was too dark to see the vessel herself; that the mate of the steamer took the night glasses and was just able to make out the head sails of the schooner, which appeared to be bound to the westward; that upon the mate's order the helm of the steamer was immediately put hard a starboard, causing the steamer to swing two or three points to port or toward the left, expecting thus to pass behind the schooner's stern; that while this was being done another torchlight, together with a red light, came suddenly in view on the schooner close at hand and just off the steamer's port bow, indicating that the schooner had changed her course from a direction west by south, and was swinging over from the starboard to the port tack; that the schooner's sails were shaking in the wind which was blowing from the northwest; that therefore the schooner must have been at that moment heading northward and a little to the right of the approaching steamer, instead of moving on westward upon the course she had apparently been sailing a few moments before; that by this move the schooner was brought up in front of and so close to the steamer as to make a collision inevitable, although the steamer's helm was at once ported in the effort to swing her to starboard and away from the schooner.

There is testimony of the survivors of the schooner apparently to the effect that the steamer crossed the schooner's

Chicago Transit Co. v. Campbell.

bow, the latter sailing a course west by south; that the schooner was kept steadily on her course, but that the steamer, with her helm a starboard, swinging to her left, described an arc of a circle, striking the schooner on the port side, nearly at right angles. The schooner sank almost immediately.

Rule 19 of the rules enacted by congress and governing navigation on the great lakes is as follows :

"When a steam vessel and a sailing vessel are proceeding in such direction as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel."

C. E. KREMER, attorney for plaintiff in error.

Mere allegation of a collision between a steam vessel and a sailing vessel does not raise a presumption that the steamer was negligent. The Resolution, Mars. Adm. Cas. 332; The Morning Light, 2 Wall. 550; The Java, 14 Wall. 189; Marsden's Collision at Sea (3d Ed.), p. 7, pp. 431; The Bridgeport, Fed. Cas. 1861; 7 Blatch. 361.

PROUDFIT & LANTZ, attorneys for defendant in error.

The death in question having occurred on Lake Huron within the territorial limits of the State of Michigan, a right of action exists by virtue of the Michigan statute, regardless of whether or not Lake Huron is high seas. Bigelow v. Nickerson, 70 Fed. Rep. 113; Ill. Cent. R. R. Co. v. Illinois, 146 U. S. 387, 435; Art. I, Constitution of Mich.; Act of Congress admitting Mich. to Union, 8 U. S. Stat. at Large, 49; Treaty of Sept. 3, 1783, between Great Britain and U. S., 8 U. S. Stat. at Large, 80.

A foreign administrator can maintain the action. Sec. 42, Chap. 3, Revised Stat. Ill.; W. St., L. & P. R. R. Co. v. Shacklett, 10 Ill. App. 404, 406; 105 Ill. 382; Wilson v. Tootle, 55 Fed. Rep. 211; McCarty v. N. Y., L. E. & W. R. R. Co., 62 Fed. Rep. 437.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is urged in behalf of plaintiff in error that no right of

action exists in this case, because it is said the collision occurred on the high seas; and in the absence of an act of congress or statute of a state giving a right of action for personal injuries causing death through negligence on the high seas, no civil action can be maintained at the common law.  If, however, the negligent act occurred within the jurisdiction of a state, the laws of that state governing such action are applicable.  Bigelow v. Nickerson, 70 Fed. Rep. 113, 116, and cases there cited.  The collision in the case before us, in which Campbell lost his life, is said to have occurred on Lake Huron at a point about eight miles from the Michigan shore.  It is sought to recover here under the provisions of the statute of Michigan, and it is contended in behalf of the defendant in error that the place where the collision occurred, although beyond the three-mile limit, is nevertheless within the jurisdiction of that state, and that the law of that state giving a right of action for death caused by an alleged wrongful act was in force and applicable at that time and place.

The Constitution of Michigan (Art. 1, Boundaries) provides that the state "consists of and has jurisdiction over the territory embraced within the following boundaries," describing them, one of which is the " boundary line between the United States and Canada to the Detroit river, Lake Huron and Lake Superior to a point where the said line last touches Lake Superior."  The act of congress admitting the state into the Union provides " that the said state shall consist of and have jurisdiction over all the territory included within the following boundaries and over none other, to wit," giving the same boundaries as described in the state constitution.  It is urged by counsel for plaintiff in error that the word "territory" as thus used refers only to the land, but does not include the waters within the prescribed boundaries.  One of the definitions of " territory" as given by the Century Dictionary is, " the extent or compass of land and the waters thereof within the bounds of or belonging to the jurisdiction of any sovereign state, city or other body."  By the treaty between Great

Britain and the United States, the boundary line in Lake Huron between the two countries was declared to lie "through the middle of said lake." It is said by the United States Supreme Court to be the "settled law of this country that the ownership of and dominion and sovereignty over lands covered by tide waters within the limits of the several states belong to the respective states within which they are found," subject always to. the paramount right of congress to control their navigation so far as necessary for regulation of commerce with foreign nations and among the states. "We hold," says the court, "that the same doctrine as to the dominion and sovereignty over and ownership of lands under. the navigable waters of the Great Lakes applies which obtains at the common law as to the dominion and sovereignty over and ownership of lands under tide waters on the borders of the sea, and that the lands are held by the same right in the one case as in the other and subject to the same trusts and limitations." Ill. Cent. R. R. Co. v. Illinois, 146 U. S. 387, 435, 437. As between nations, the minimum limit of the territorial jurisdiction of a nation over tide waters is a marine league from the coast, and within these limits a state of the Union can define its boundaries on the sea and extend its sovereignty and jurisdiction to all places within such territorial limit, including in this territorial jurisdiction the right of control over fisheries. Manchester v. Massachusetts, 139 U. S. 240–258, and cases there cited. As, therefore, by the treaty with Great Britain, the boundary line between the two countries is through the middle of Lake Huron, and the boundary line of the State of Michigan coincides therewith, the laws of that state, so far as applicable, extend over the whole of the waters of that lake within the state boundaries in the same manner and to the same extent as if they were tide waters extending only a marine league from its shores. The collision and death in this case occurred upon Lake Huron at a point within the territorial limits of Michigan as above defined, over which the sovereignty and jurisdiction of that state extended, and which was subject to

the operation of its laws, limited and controlled only by the paramount law of the nation. We do not understand United States v. Rodgers, 150 U. S. 249, as sustaining any different view.

Objection is made to the sufficiency of the averments of the declaration, but in our opinion the objection is not well taken. The rules governing navigation on the great lakes, as established by act of congress, require a steam vessel to keep out of the way of a sailing vessel when such vessels are proceeding in such direction as to involve risk of collision. The declaration states that it was the duty of plaintiff in error to so control the steamer as to prevent a collision with the schooner, but that, not regarding this duty, the steamer was so negligently managed that through the fault and negligence of the plaintiff in error the collision occurred, causing the injury and death complained of, the deceased being in the exercise of due care and diligence for his own safety.

It is argued that as the defendant in error was not appointed administratrix in Illinois, but only in Michigan, the action can not be maintained. We think, however, that the ruling in Union Transit Company v. Shacklet, 119 Ill. 232, and Wabash, St. Louis & P. Ry. Co. v. Shacklet, Administratrix, 105 Ill. 364, must be deemed conclusive against this objection.

The first instruction given in behalf of defendant in error is as follows:

"If the jury believe from all the evidence in this case that the steamer 'W. P. Ketcham,' on the morning of October 14, 1899, on Lake Huron, collided with the schooner 'Typo,' as charged in that behalf in the declaration herein, and that the deceased, John Campbell, lost his life in consequence thereof, then the burden is upon the said steamer to show a sufficient reason for such collision."

It is urged that this instruction is misleading and erroneous, especially as the court refused to give for plaintiff in error an instruction as follows:

"The jury are instructed that the burden of the proof is upon the plaintiff to establish her case by a preponderance

of the evidence, and that if the jury believe that a preponderance of the evidence is with the defendant, or if the jury find that the evidence is equally balanced, so that they can not determine whether the preponderance lies with the plaintiff or with the defendant, then they must find the issues for the defendant."

It is contended, in behalf of defendant in error, that the mere fact of a collision between a steam and sailing vessel upon an open sea raises a presumption of negligence and constitutes a *prima facie* case against the steamer and devolves upon it the necessity of explaining the collision. Rule 19 of the rules of navigation enacted by congress require the steamer to "keep out of the way of the sailing vessel;" but there is nothing in that rule or any of the others which would justify or support the broad and sweeping proposition contended for. Under the rule and the authorities the presumption of negligence on the part of the steamer arises, not from the mere collision; it must also appear that it did not keep out of the way of the sailing vessel. The instruction given for defendant in error was erroneous in not being conditioned upon such a finding of fact by the jury. The Oregon v. Rocca, 18 How. 570; The Carroll, 8 Wall. 302; The Java, 14 Blatchf. 527; The Pennland, 23 Fed. 551. In the case of The Carroll, *supra*, the Supreme Court say (the italics are ours): "*As the steamer did not keep out of her way*, and as the collision did occur, the steamer is *prima facie* liable, and can only relieve herself by showing," etc. In The Oregon case, *supra*, the language of the same court is: "The rule of this court is, when a steamer approaches a sailing vessel, the steamer is required to exercise the necessary precautions to avoid a collision; and if *this* be not done, *prima facie* the steamer is chargeable with fault." In the case of The Java, *supra*, the court say: "The Java, being a steamer, was bound to keep out of the way of the sailing vessel, and the burden is upon her to show a sufficient reason *for not doing so.*" This language presupposes a finding that the steamer "had not done so," *i. e.*, that the steamer had not kept out of the way. The same idea is conveyed by the ruling

in the case of The Pennland, *supra:* " The steamer was bound to keep out of the way of the brig. She must be held answerable for not having done so, unless," etc.

In some of the cases, it is true, language can be found apparently indicating that the mere collision of a steamer with a sailing vessel makes the steamer presumptively liable. Admiralty cases are tried without a jury. No instructions are given. The reviewing court also passes upon the facts, and absolute precision of language is not always to be expected. In view of the wording of the rule it can not be that the collision in and of itself makes a *prima facie* case against the steamer. The rule does not so say; it only requires the steamer to keep out of the way; after it has been shown that it did not do so, then and only then, the presumption of negligence follows.

As appears from the statement preceding this opinion, there is evidence tending to show that upon discovering the schooner, which was then about half or three-quarters of a mile away, the steamer immediately changed its course and would thus have passed behind the schooner's stern and avoided a collision with it, if the schooner had not afterward changed its course, and thereby rendered a collision unavoidable. Upon such a state of the proof it was imperative that the instruction complained of should have submitted to the jury the question whether the steamer did or did not keep out of the way.

The trial court also committed material error in refusing the instruction asked by plaintiff in error regarding the burden of proof. Before the presumption of negligence could arise, it was for the plaintiff to prove by a preponderance of the evidence that the steamer did not keep out of the way of the schooner.

As regards the second instruction given for defendant in error we are of opinion that for reasons stated in C. & A. R. R. Co. v. Harrington, 192 Ill. 9, 29, and in other cases, the doctrine of fellow-servants has no application to this case.

In view of the conclusions reached it is unnecessary to review other points presented in the brief. The judgment of the Superior Court must be reversed and the cause remanded.