The Chicago and Alton Railroad Company

*v.*

Nicholas Vipond, Admr.

*Opinion filed October 24, 1904.*

1. Trial,—*failure to prove immaterial averment not ground for directing verdict.* Failure to prove an averment that certain semaphores erected and used by certain railroads, including the defendant, were under the control of the servants of such companies, whereas the proof showed they were operated by the servants of one company only, is not ground for directing a verdict for the defendant, where no negligence in the management of the semaphore is charged.

2. Negligence—*what does not affect right of recovery.* The right to recover against a railroad company for the death of a fireman employed by another company, caused by a collision at the crossing of the roads, is not affected by the question whether or not the engineer with whom the fireman was working was negligent in not watching for defendant's train instead of relying altogether upon the semaphore lights.

3. Same—*what does not bar recovery.* That the engineer with whom plaintiff's intestate was working as fireman was running at a speed prohibited by ordinance at the time it collided with defendant's train at the crossing of the two roads does not bar the right to recover from the defendant company for the consequent death of the fireman.

4. Evidence—*what testimony is not a mere conclusion.* Where the semaphore at a railroad crossing is torn down by the collision which caused the death of plaintiff's intestate, witnesses who passed over the crossing frequently that night may testify that the semaphore was in good order and working all right prior to the collision, such testimony being properly regarded as statements of fact rather than conclusions.

5. Same—*what admissible as tending to show position of semaphore lights.* Where the semaphores on parallel tracks at a railroad crossing are operated by the same wire and with the same result, testimony that at the time of the accident complained of a red light was displayed on one of the tracks tends to show that a red light was also displayed on the parallel track, there being no evidence that the semaphores were not in usual working order.

*C. & A. R. R. Co.* v. *Vipond,* 112 Ill. App. 558, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. H. M. Trimble, Judge, presiding:

C. W. Brown, and A. H. Shay, for appellant.

H. H. Dicus, and McDougall & Chapman, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

The tracks of the Chicago and Alton Railroad Company and of the Indiana, Illinois and Iowa Railroad Company, called the "Three I," run parallel with each other in the city of Streator and about seventy-five feet apart. Said tracks are crossed by the double tracks of the Atchison, Topeka and Santa Fe Railroad Company nearly at right angles. There is a semaphore at the crossing of the Chicago and Alton and another at the crossing of the Three I, by which the use of the crossings is regulated. At night there are two lamps in each semaphore, and both semaphores are operated by the same lever, by means of a wire running near the ground. When the semaphores are in one position the lamps show white lights on the tracks of the Santa Fe and red lights on the tracks of the Chicago and Alton and Three I. When placed in the other position by means of the lever they show red lights on the Santa Fe and white lights on the other roads. A red light is a signal of danger and shows that the crossing cannot be used by the road on which it is displayed, and when shown it is the duty of the engineer to stop before reaching the crossing. A white light is a signal of safety, showing that trains approaching on the road where it is displayed have the right of way. When the safety signal is displayed on the Santa Fe, danger signals are necessarily shown on the other roads. These signals had regulated

the use of the crossings for eight or nine years before December 27, 1899, and at night had stood with the white light for the Santa Fe unless the crossing was called for by an engineer on one of the other roads, when the position was changed, showing the red light on the Santa Fe, and after the train had passed the lights were restored to their former position. On the morning of that day, at about 1:40 A. M., a switch engine on the Santa Fe, backing and hauling freight cars, and a passenger train of appellant, came in collision on the crossing, and Henry Dirkes, fireman on the Santa Fe engine, received injuries from which he died. The passenger train was a regular one and was on time. Appellee was appointed administrator of the estate of Henry Dirkes and brought this suit in the circuit court of LaSalle county to recover damages for his death. There were three counts in the declaration, the second and third of which were withdrawn on the trial, and the first alleged the use of the semaphore at the crossing to indicate to those in charge of locomotives and trains, safety or danger in passing the crossing; that the white light indicated safety and the red danger; that the semaphore showed a white light on the Santa Fe and a red light on the Alton, and that the train on the Alton was carelessly and improperly driven over the crossing without stopping, causing the collision and injuries from which Dirkes died. Upon the trial there was a verdict for $5000, on which judgment was entered, and the judgment was affirmed by the Appellate Court for the Second District.

At the close of the evidence the defendant moved the court to direct a verdict of not guilty, and the court denied the motion. It is insisted that there was manifest error in this ruling for several reasons. The declaration alleged that the semaphore was under the care and operated by servants of the railroads, while the evidence showed that it was in the charge of an employee of one of them,—the Santa Fe company. It was a material averment that there had been erected and was in use by the companies a semaphore to in-

dicate whether it was safe to pass over the crossing, and this averment was proved; but there was no charge of negligence in the management of the semaphore or that the injury resulted from any fault or neglect of the person in charge of it, so that the question whether such person was the servant of one or both was wholly immaterial. The averment being immaterial, it was not necessary to prove it.

The declaration also averred that while Dirkes was using due care on his part, the servants of the defendant carelessly and improperly drove and ran its train over the crossing when the red light indicated that it was dangerous to cross. It is insisted that the record is barren of any evidence to support the declaration that the red light was shown on the Alton track. The semaphore had been in use for many years controlling the movement of trains over the crossing, and its construction was such that whenever a white light was displayed on the Santa Fe a red light was necessarily shown on the Alton, and a number of witnesses testified that such was the fact in its operation. There was considerable testimony, wholly uncontradicted, that the white light was shown on the Santa Fe before and at the time of the collision. Furthermore, the semaphores at the Alton crossing and the Three I crossing were operated by the same lever and showed the lights at the two crossings in the same way at the same time. It was proved that at the time of the collision a red light was shown on the Three I by the semaphore at that crossing. The only ground for saying that there was no evidence that there was a red light displayed on the Alton is the fact that the engineer, fireman, conductor and brakeman on the Alton train testified that while at the depot, and before starting toward the crossing, the light at the semaphore was white, and the engineer and fireman testified that it continued white up to the collision. It cannot be said, as a matter of law, that because these witnesses so testified the evidence for the plaintiff did not tend to prove the contrary. Indeed, it is quite clear that unless something had recently happened to the

semaphore a red light was shown on the Alton track. There was no evidence tending to show that the condition of the semaphore had changed or that it was not in working order, as it had been up to that time. On the contrary, there was evidence that it was in its usual working order. The question whether a red light was shown on the Alton track was one of fact, which was properly submitted, in the first instance, to the jury.

It is also urged that Dirkes, being a fireman on the Santa Fe engine, was guilty of negligence in not being on the lookout for the Alton train; that the engineer was negligent in relying entirely on the semaphore light and not also watching for a train on the Alton, and that if the engineer was negligent the plaintiff could not recover. The evidence does not show exactly what Dirkes did in the way of watching for a train on the Alton track, but the view was obstructed to some extent, although to what extent was a controverted question on the trial. The evidence would not warrant the court in saying, as a matter of law, that Dirkes was guilty of negligence. The testimony of the engineer shows that his reliance was on the semaphore lights which regulated the use of the crossings, but if he ought to have been watching the Alton track as well as the semaphore lights, Dirkes was not responsible in any way for his negligence, and the right to recover would not be affected by it. There was no error in refusing to direct a verdict.

It is next argued that the court erred in permitting witnesses for the plaintiff, who said they had been over the crossing frequently that night, to testify that the semaphore was in good working order and working all right. The semaphore at the Alton crossing was torn down in the collision and its condition could not be proved except as it was found after the accident, when the nine-inch red glass in the arm was unbroken. The objection is that the witnesses stated conclusions, and not facts; that they ought to have explained the mechanism of the semaphores, the con-

dition of the mechanical contrivances, and what they did in the way of observing or examining them that night. We do not regard the testimony as mere conclusions, but rather as statements of fact that the semaphores were in their usual condition and working as usual. What the witnesses knew about the subject was made plain on the cross-examination.

The court admitted evidence that a red light was shown on the Three I track at the time of the accident, and it is insisted that this was error. It was proved that the two semaphores worked in unison by the same lever and wire, and when a red light was shown on the Three I a red light was displayed on the Alton at the same time. The fact that a red light was shown on the Three I therefore tended to prove that the semaphore was in such position that the red light was also shown on the Alton. Unless the semaphore at the Alton crossing had become out of order,—of which there was no presumption,—the red lights were necessarily shown on the two roads at the same time.

The court refused to admit in evidence an ordinance of the city of Streator limiting the speed of an engine or car, other than a passenger train, to six miles per hour. The Santa Fe engineer testified that he was running seven or eight miles an hour at the time of the collision, and it is insisted that the rate of speed was negligence which would bar a recovery, and therefore the court erred in not admitting the ordinance. Dirkes, the fireman, was not in charge of the engine nor controlling its speed, and if there was negligence in that respect it was that of the engineer. If such negligence caused or contributed to the accident it would not excuse the Alton for an injury to one who was without fault or negligence. Counsel refer to the case of *City of Joliet* v. *Seward,* 86 Ill. 402, as sustaining the claim that one who has put himself in the care of another is responsible for the negligence of such other person and cannot recover for an injury to which the negligence of that person has contributed. In this case Dirkes had not put himself under the

care of the engineer to be carried over the crossing, and if he had, a different rule was laid down in the later cases of *Wabash, St. Louis and Pacific Railway Co.* v. *Shacklet,* 105 Ill. 364, *Consolidated Ice Machine Co.* v. *Keifer,* 134 id. 481, and *Chicago City Railway Co.* v. *Wilcox,* 138 id. 370.

Next it is urged that the court erred in giving and refusing instructions, and it is said that the instruction given at the instance of the plaintiff assumed the fact that Dirkes was exercising ordinary care for his own safety. The instruction did not assume the existence of such fact.

The court refused instructions based on the statute requiring an engine to come to a full stop within eight hundred feet of the crossing of another railway, which stated that if there was a failure to stop the Santa Fe engine within that distance plaintiff could not recover. The evidence was undisputed that the Santa Fe engine was started six hundred and forty-five feet from the crossing, so that the jury could not have found that it did not stop within eight hundred feet, and it was not error to refuse those instructions.

Instruction No. 19 tendered by the defendant stated that negligence of the engineer on the switch engine would be attributable to Dirkes as his negligence. We have already alluded to that question, but the court gave the second and third instructions asked by the defendant stating a rule exactly as contended for by counsel, and prohibiting a recovery if the engineer was guilty of negligence contributing to bring. about the collision. Certainly the defendant had no ground of complaint on that question.

In the argument to the jury counsel for plaintiff commenced a statement that the income from $5000, especially when something was deducted for the expenses of litigation, would not be a fair substitute—when the statement was objected to by counsel for defendant. The counsel making the argument expressed a willingness to have it struck out if not proper, and the court said he thought it proper to discuss the question of damages. The sentence was never completed,

and while the expenses of litigation could not be taken into consideration in awarding damages there was no further argument on that basis, and we do not think the judgment should be reversed on account of what was said in the incomplete statement.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*