The Consolidated Ice Machine Company *et al.*

*v.*

Anton Keifer, Admr.

*Filed at Mt. Vernon November 5, 1890.*

1. Negligence—*joint liability—concurring negligence of several.* If two or more persons are jointly concerned in a particular act which occasions injury to another, they may be sued jointly, and all persons who co-operate in an act directly causing injury are jointly liable for its consequences, if they act in concert, or unite in causing a single injury, even though acting independently of each other.

2. So where the negligence of two or more persons directly concurs to produce an injury to another, although one may have undertaken one part of the particular work and another another part, and the negligence occurs in the performance of each of the several parts of the work which directly contributes to produce the injury, all will be liable.

3. Where the owner of a brewery employs another to erect for him a refrigerator for making ice, and undertakes to furnish a support for the tank to be used as a part of the plant, and the other is to put up the tank, etc., it will be the duty of each party, in the performance of his part of the work, to use reasonable care to avoid injury to the servants of either and to third persons.

4. An ice machine company undertook to erect for a brewery company a refrigerator plant, which included a large iron tank. The latter company was to fix the location for the plant, and make and put in proper supports for the tank. When the supports were completed the agent of the machine company notified the president of the brewery company that they were not sufficient, but afterward, with this knowledge on the part of both companies, the agent of the machine company, with the approval of the brewery company, put the tank upon these insufficient supports, and commenced filling it with water, and sent one of its servants on the roof, who had no notice of the danger, and while he was on the roof the supports of the tank gave way, which caused the servant to fall with the roof, whereby he was killed: *Held,* that the companies were jointly liable in an action by the personal representative of the servant killed.

5. Evidence—*joint action for negligence—evidence to show notice.* In an action against two, where concurring negligence is alleged, proof that one defendant told his co-defendant that certain supports for a water tank which was proposed to be erected by the former for the latter, were not strong enough to sustain the weight of the tank, before

31—134 Ill.

the same gave way and caused the death of a servant, is competent evidence against both defendants, in an action to recover for the servant's death, to show that both defendants had notice of the insufficiency of the supports, and therefore both were guilty of negligence.

6. SAME—*as to directions given by an agent—as affecting a question of negligence.* On a question of the joint negligence of two corporations resulting in the death of plaintiff's intestate, the directions of the superintendent of one of the companies to put certain work where the other company directed, are admissible as against his company.

7. SAME—*evidence for a particular purpose.* Where evidence is competent as to one defendant but not as to another, there will be no error in its admission, but its use and application may be limited by instructions. If evidence is proper for any purpose, its admission is not error.

8. WITNESSES—*competency—stockholder in behalf of corporation.* In an action under the statute, by the administrator of a deceased person against an incorporated company, to recover for negligence causing the death of the intestate, a stockholder in the company, being interested in the result of the litigation, is incompetent to testify as a witness in behalf of the defendant.

9. SAME—*impeachment—testimony of witness on another occasion.* In an action to recover for the death of a person, occasioned, as alleged, by negligence in the erection of certain machinery, a witness testified that if a swivel in a hog chain had not been defective a truss would have supported from sixty to a hundred thousand pounds. On cross-examination the witness admitted he testified at the coronor's inquest, and when shown the transcript of his evidence as signed by him, he was asked if he did not, on such examination, state that the hog chain, if perfect, would have sustained about thirty tons, to which he answered that he did not recollect. In rebuttal, the court allowed in evidence the deposition of the witness before the coroner showing he did so testify: *Held,* the deposition was properly admitted, by way of impeachment.

10. MASTER AND SERVANT—*liability of master for acts of servant.* In an action against a master to recover for negligence of his servant, the former can not prove the directions he gave his servant, as the servant's failure to obey instructions will not exonerate him from liability.

11. APPEALS—*finding of facts by Appellate Court—presumption.* Where the Appellate Court affirms a judgment of the trial court in favor of the plaintiff, against two corporations sued jointly, it will be presumed that the Appellate Court has found all the facts alleged which are necessary to show a joint liability.

APPEAL from the Appellate Court for the Fourth District ;— heard in that court on appeal from the City Court of East St. Louis ; the Hon. B. H. Canby, Judge, presiding.

This was an action on the case, brought by Anton Keifer, administrator of the estate of John Keifer, deceased, against the Consolidated Ice Company and the Heim Brewing Company, both defendants being private corporations, to recover damages for causing the death of the intestate.

The declaration contains two counts, the first of which alleges, in substance, that on December 28, 1886, the intestate was, with other persons, in the employ of the defendant the ice machine company, as a laborer, in the erection of a refrigerator plant at the brewery of the defendant the Heim Brewing Company, and in the performance of his duties as such laborer, and by the direction of the officers and servants of the defendants, he was required to go upon the roof of the engine house of said brewery, upon which was erected a large tank of great weight, and which was a part of said refrigerator plant, and which tank was supported by beams and a chain, called a "hog chain," and that it then and there became and was the duty of said defendants to exercise care and prudence in providing supports for said tank, so that the same should not give way and fall, and produce injury to persons engaged in working in the erection of said refrigerator plant, but that said defendants neglected their duty in this regard, and negligently and carelessly failed to provide supports of sufficient strength to sustain said tank, and while the said John Keifer was upon the roof of said engine house, as aforesaid, and in the exercise of due care on his part, and without knowledge as to the insufficiency of said supports for said tank, because of the insufficiency of said support said tank gave way and fell, taking with it a portion of the roof of said engine house, upon which the said John Keifer was standing at the time, as aforesaid, precipitating said John Keifer into said engine house, whereby he was then, etc., killed.

The second count alleges, in substance, that the intestate, with others, was in the employ of the said Consolidated Ice Company, as a laborer, in the erection of a refrigerator plant

at the brewery of the defendant the Heim Brewing Company, and at the request of said Heim Brewing Company, and as such laborer, and by the direction of the officers and servants of said Consolidated Ice Company, he, the said John Keifer, was directed to go upon the roof of the engine house at said brewery, upon which was erected a large tank of great weight, and which was a part of said refrigerator plant, and which tank was supported by beams and a chain, called a "hog chain;" and the plaintiff avers that said support for said tank was provided and erected by said defendant the Heim Brewing Company, and it then and there became and was the duty of said last named defendant to exercise care and prudence in providing supports for said tank, and it then and there became and was the duty of said ice machine company not to undertake the erection of said refrigerator plant upon insufficient supports for the same, and to exercise care and prudence in seeing that said supports were sufficient to support said tank before undertaking the erection of said refrigerator plant, so that the same would not give way and fall, and produce injury to persons engaged in the erection of such plant, but that said defendants neglected their duties in this regard, in this, that said Heim Brewing Company negligently and carelessly failed to provide supports of sufficient strength to support said tank, and that the ice machine company negligently and carelessly undertook and attempted the erection of said refrigerator plant, when it knew, or might have known by the exercise of ordinary care and prudence, that the supports of said tank were wholly insufficient; and while said John Keifer was upon the roof of said engine house, as aforesaid, etc.,—concluding as in the first count.

Each defendant pleaded the general issue, and at the April term, 1887, the cause was tried before a jury, who returned a verdict finding both defendants guilty, and assessing plaintiff's damages at $2500. The court overruled motions for a new trial, and rendered judgment on the verdict. Separate appeals

were prayed to the Appellate Court, and allowed.  The Appellate Court affirmed the judgment, and each of the defendants appealed from such judgment of affirmance.

Mr. LEO KASSIEUR, and Mr. W. C. KUEFFNER, for the appellant the Consolidated Ice Company :

The opinions of witnesses as to the sufficiency of the supports were inadmissible.  Lawson on Expert Testimony, 3 ; *Chicago* v. *McGiven,* 78 Ill. 349 ; *Linn* v. *Sigsbee,* 67 id. 75 ; *Fairbury* v. *Rogers,* 98 id. 554.

A witness can not be impeached by proof of contradictory statements out of court, unless his attention has been directed, on his examination, to those contradictory statements, specifying particularly time and place.  *Richardson* v. *Kelly,* 85 Ill. 493 ; *Reginer* v. *Cabot,* 2 Gilm. 34 ; *Root* v. *Wood,* 34 Ill. 283 ; *Miner* v. *Phillips,* 42 id. 123 ; *Winslow* v. *Newlan,* 45 id. 145.

Mr. M. MILLARD, for the appellant the Heim Brewing Company :

Parties are not jointly liable for a tort unless they co-operate or unite in its commission, or if it arises from a breach of duty ; or, in case of negligence, unless they sustain the same relation to the defendant,—that is, owe him the same duty at the same time, and for the same reason.

The plaintiff, here, is suing his own master for a breach of duty, and has joined with him another party who was not sustaining that relation to him, for the breach of another duty, and the declaration charges these breaches as separate acts of negligence.  It does not allege a joint duty, and is not based upon the theory of joint action or neglect, and, therefore, does not show a joint liability.  Instead of charging concerted action it alleges separate conduct, and as the wrongful act of one party rests upon the rights of a servant against his master, and of the other upon the rights of a person who is in

no way related to the wrongdoer, it is clear that these causes of action can not be joined in the same suit. *Yeazel* v. *Alexander*, 58 Ill. 254; *Railway Co.* v. *Scates*, 90 id. 586.

The accident was caused by a latent defect in the swivel, which was hidden from view, and was not visible to the eye. In such case there is no liability, because there is no negligence. Beach on Contributory Neg. sec. 133; *Malone* v. *Hathaway*, 64 N. Y. 5; *Railroad Co.* v. *Kenney*, 58 Ga. 485; *Ladd* v. *Railroad Co.* 119 Mass. 412; *Ford* v. *Railroad Co.* 110 id. 240; *Ruby* v. *Steamship Co.* 29 La. Ann. 791; *Murphy* v. *Railroad Co.* 88 N. Y. 146.

Even in railway cases, where the highest degree of care is exacted, the rule is enforced. *Railroad Co.* v. *Phillips*, 49 Ill. 237; *Railroad Co.* v. *Conroy*, 68 id. 567.

The court erred in admitting proof of the statements of Dennerty, the foreman of the ice company, as evidence against the brewing company. 1 Greenleaf on Evidence, sec. 176; *Daniels* v. *Potter*, M. & M. 501.

Mr. G. B. Burnett, Mr. R. A. Halbert, and Messrs. Flannigen & Rafter, for the appellee:

The proof shows that both defendants were acting in concert, and co-operating to effect a common purpose,—the erection of the refrigerator plant; that Gohn, (Heim's carpenter,) consulting with Dennerty, the superintendent of the ice company, was present, and that deceased was killed through the means of this concurring negligence. The proof brings the case within the rule in *Yeazel* v. *Alexander*, 58 Ill. 254.

If two or more persons are jointly concerned in a particular act resulting in injury to another, they may be sued jointly. So far has this been carried, that it is held in Massachusetts that one who superintends, although gratuitously, and not under contract, work done on premises of another, and through whose negligence, as well as of such other, an injury occurs, is liable therefor in an action against him and such other,

jointly.    Wharton on Negligence, sec. 788; *Hawkesworth* v. *Thompson*, 98 Mass. 77.

It is a familiar rule, that if the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, the party injured may recover damages of either, or both.    Thompson on Negligence, 1088, and authorities there cited.

In this case, the deceased lost his life through the concurring and successive negligence of the ice machine company and the brewing company, combined, and the action may be maintained against them either severally or jointly.   *Railway Co.* v. *Shacklet*, 105 Ill. 364.

There was no error in the admission of evidence.

A stockholder was incompetent at common law, on the ground of interest.   1 Phillips on Evidence, 39; *Ryder* v. *Railroad Co.* 13 Ill. 516.

If the intestate was the servant of the brewing company, that company could, by proof of directions given by it, shift the responsibility on another servant.   *Hutchinson* v. *Railroad Co.* 6 Eng. Ry. and Canal Cases, 442; *Railway Co.* v. *Swett*, 45 Ill. 197.

A direction given to a foreman, which, if followed, would have prevented injury to a servant, is not sufficient, in law, to exonerate the master from liability.   *Avilla* v. *Nash*, 117 Mass. 318.

In all cases the master must show that he in fact adopted such precautions as ordinary prudence suggests, and failing in that, he is liable, although the injury resulted in part from the negligence of a co-servant.   *Cayzer* v. *Taylor*, 10 Gray, 274.

The rule is, to hold the master liable for negligence in the performance of the duties he has impliedly contracted to perform toward the servant, among which is the duty of selecting suitable and safe appliances, no matter whether he attempts to perform them in person or by another; and he can not be permitted to show that he had instructed the latter to make

the structure safe. It is immaterial what instructions he gave his servant in respect to building the structure. If the latter was negligent, his negligence in this regard is the negligence of the master, as before stated, and the master is liable, notwithstanding such instructions. Wood on Master and Servant, 860; *Fuller* v. *Jewett,* 80 N. Y. 52; *Booth* v. *Railroad Co.* 73 id. 40; *Herbet* v. *Railroad Co.* 116 U. S. 642; Beach on Contributory Neg. sec. 130; Wharton on Negligence, sec. 232, note; Patterson on Ry. Accidents, 329, 330.

If the deceased is not to be considered a servant of the brewing company, then his relation to that company was that of one who was impliedly invited by it upon its premises. In such case, the duty of the brewing company was to warn the deceased of any danger of which the brewing company had knowledge, or of which it ought to have had knowledge, and of which the deceased was not aware. *Sanderson* v. *Cleveland, etc., Co.* 49 Mich. 164; *Coughtry* v. *Woolen Co.* 56 N. Y. 124.

Such being the law, it was not competent for the brewing company to prove that it had instructed its foreman to build a good and strong truss, because whether or not it had given such instructions was wholly immaterial.

Mr. Justice Shope delivered the opinion of the Court:

The judgment of affirmance rendered by the Appellate Court is conclusive upon all questions of fact. It must be presumed that the facts were found to be sufficient to maintain the plaintiff's cause of action against each of the defendants, and that the negligent conduct of each contributed to the death of the intestate.

The principal question arises upon objection to the first instruction given at the instance of plaintiff. That instruction told the jury, in effect, that if the evidence warranted, they might find either or both of the defendants guilty, and was, as said by counsel, "based upon the supposition that there was

a joint liability." It is insisted, with great earnestness, that these defendants could not be jointly liable, because, as it is said, they did not co-operate and unite in the commission of a tort, and, in respect of their negligence, that the brewing company owed the deceased no duty, and that where negli- gence is relied upon as the ground of recovery, the duty must be joint in order to make the liability joint. If this was so, it would necessarily be presumed, from the judgment of affirm- ance, that the facts sustained the right of recovery. Upon looking into the evidence, however, it will be found that it sustains the allegations of the declaration. It is shown that the ice machine company undertook to erect a refrigerator plant for the brewing company, at its brewery, which included a large iron tank. The brewing company was to fix the loca- tion for the plant, and make and put in proper supports for the tank. It selected its engine room for this purpose, and the iron tank was to be set upon supports eighteen or twenty feet from the ground. To do this, part of the roof of the en- gine house was cut away, and one side of the tank was to rest upon one wall of the engine room, and the other was supported by a truss made of two wooden beams, fourteen inches wide and seven inches thick, twenty-four feet long, bolted together, and these beams were further strengthened by a hog chain. The hog chain consisted of two iron rods, anchored, one in the north and the other in the south wall of the engine room, and joined together in the center of the supporting beams by a swivel. Timbers were laid from this truss to and upon the east wall of the engine house, and upon this structure the iron tank was placed, extending three feet over the beam, so that the greater portion of the weight of the tank rested upon the truss. It is shown that when the truss was completed the superintendent of the ice machine company told the pres- ident of the brewing company that it was insufficient, and never would support the tank, who replied, in substance, that it would do. Without further objection the ice machine com-

pany placed the tank on the support, as intended by the brewing company. After the tank was up, the superintendent of the ice machine company directed the intestate, with others, to go upon the roof of the engine house and fit in it the heater. The tank was, at the time, being filled with water; and while the intestate was on the roof, in compliance with such direction, the truss gave way, the tank fell, taking with it part of the roof of the engine house, and precipitating Keifer to the floor of the engine room, whereby he was killed.

Under the state of facts alleged and shown, it was the duty of each of the defendants, in the performance of their several parts of the work, to use reasonable care to avoid injury to the servants of either, and to third persons. If Dennerty, the superintendent of the ice machine company, knew, as he told Heim, that the truss provided by the brewing company would not support the tank, he was guilty of negligence in sending the intestate to work upon the tank while it was being filled with water. On the other hand, it was the plain duty of the brewing company, when it undertook to provide the support, to make it sufficient to sustain the tank when filled with water. The purpose of the erection of the tank was that it might be filled with water, and the disastrous consequences of an insufficient support could be readily foreseen. That the tank fell because of the insufficient support furnished by the brewing company is determined by the judgment of the Appellate Court. But if this were not so, there is evidence tending to show it was wholly insufficient, and that knowledge thereof was brought home to the brewing company before the tank was placed thereon.

It is, however, claimed, that if either defendant has been guilty of negligence resulting in injury to the intestate, it is their several negligence, and can not be charged against the other defendant. The evidence shows, beyond dispute, that both defendants, in respect to the matters being considered, were acting together to accomplish a common purpose. It is

true the work was apportioned among them; but this does not change the common purpose and object of their several acts. The brewing company, as we have seen, was to fix the location of the plant, and provide the truss or support for the tank. When this was done, the ice machine company was to erect a plant, and put the tank upon the support so furnished. The parts acted by each company looked alone to the erection and completion of the refrigerator plant. As said by the Appellate Court: "The brewing company was negligent in providing a structure which was unsafe and insufficient, whereby deceased incurred an extra peril, when at his work, not incident to his employment. The ice machine company was negligent in directing deceased to work in this place of danger, it having knowledge, and he being without notice or knowledge, of such danger, and the successive concurrent negligence of appellants thus united in causing the death of Keifer."

In Cooley on Torts, (1st ed.) 684, it is said: "In general, the negligence of third parties concurring with that of the defendant to produce an injury, is no defense. It could, at most, only render the third party liable to be sued also, as a joint wrongdoer." (*Pennsylvania Railroad Co.* v. *Mahoney,* 57 Pa. St. 187; *Cleveland and C., etc., Railroad Co.* v. *Piny,* 8 Ohio St. 570.) In Hilliard on Remedies for Torts, 178, the law is thus stated: "One injured by the concurrent negligence of two persons may maintain a joint action against them. Thus, where the trains of two companies using the same track come in collision, an action is maintainable against them jointly for the injuries incurred." (*Coleglove* v. *New York and New Haven Railroad Co.* 20 N. Y. 492.) Deering, in his work on Negligence, sec. 395, says: "An action lies against two persons jointly superintending a work, which was so negligently done that it caused injury to the plaintiff; and it makes no difference that one rendered his services to the other gratuitously." (*Hocksworth* v. *Thompson,* 98 Mass. 419.) And again: "When separate and independent acts of negligence of two persons are

the direct cause of a single injury to a third person, it is impossible to determine in what proportion each contributes to the injury. Either is responsible for the whole injury, and this though his act, alone, might not have caused an injury, and though, without fault on his part, the same damages would have resulted from the act of the other." (See *Slater* v. *Mersereau,* 64 N. Y. 128.) In Wharton on Negligence, sec. 788, the rule is stated to be, that "if two or more persons are jointly concerned in a particular act they may be sued jointly." And so, if several persons are jointly bound to perform a duty, they are jointly and severally liable for omitting to perform or for performing it negligently. All persons who co-operate in an act directly causing injury are jointly liable for its consequences, if they acted in concert, or united in causing a single injury, even though acting independent of each other. (1 Shearman & Redfield on Negligence, sec. 122.) In *Cuddy* v. *Horn,* 46 Mich. 596, it was held that an act wrongfully done by the joint agency or co-operation of several persons, or done contemporaneously by them without concert, renders them liable; and it was held, that if a passenger on one vessel is injured by its collision with another in consequence of the negligence of the officers of both, he has a right of action against them jointly. (See, also, *Stone* v. *Dickinson,* 5 Allen, 31; *Cooper* v. *E. T. Co.* 75 N. Y. 116; 2 Thompson on Negligence, 1088.) In *Wabash, St. Louis and Pacific Ry. Co.* v. *Shacklet,* 105 Ill. 364, which was a case where a passenger upon one train of cars was killed by the collision with the train of another company using the same track, through the mutual negligence of the servants of the two companies, we said: "We are of opinion that public interests will be best subserved by adhering strictly to the long and well established principle, that one who has received an actionable injury at the hands of two or more wrongdoers, all, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and the plaintiff, in such case, has his election to sue all jointly, or he may

bring his separate action against each or any one of the wrong-doers."

There can, in such case, be no apportionment of damages as between the several parties whose negligent acts and conduct have contributed to the injury. Nor can one of the wrong-doers compel contribution from the other. There can be but one recovery for the damages sustained, and this, as we have seen, may be several as against each wrongdoer whose act or negligent conduct has contributed to produce the injurious result; and where the negligence of two or more persons directly concurs to produce the injury, although one may have undertaken one part and another another part, and the negligence occurs in the performance of each of the several parts of the work which directly contributes to produce the injury, all will be jointly liable. The test seems to be, whether or not the negligence of each directly contributed in producing the injurious result. Here, the brewing company intended that its defective support should be used as it was used, and it having express notice of the insufficiency thereof, it became responsible to any one injured, while exercising due care, from the use to which it was thus applied by its direction and supervision; and the ice machine company, with knowledge of its insufficiency, went on and placed the tank thereon, and thereby became responsible for injuries to any of its servants it might send to work upon the tank, without giving them notice of the danger to which they were exposed. Here, the negligence of each of these defendants directly concurred in producing the death of Keifer.

It is urged that the court erred in the admission of evidence. The witnesses Marion and Gaines testified at the trial, that if the swivel in the hog chain had not been defective the truss would have supported from sixty to one hundred thousand pounds. On cross-examination, plaintiff showed by them that they testified at the coroner's inquest upon the body of Keifer, and having identified the transcript of their testimony, as

taken down by the coroner, and signed by them, they were asked if they did not state in that examination that the hog chain, if perfect, would have sustained about thirty tons, to which they answered they did not recollect. Plaintiff, in rebuttal, introduced in evidence that portion of the witnesses' testimony to which their attention had been called, which showed they did so testify. Their deposition before the coroner had been read to and signed by these witnesses, and on cross-examination their attention had been particularly directed thereto. This evidence was offered by way of impeachment, and was entirely competent. The mode of examination seems to have conformed to the rule in reference to examinations in respect of written instruments. 1 Greenleaf on Evidence, 452-465.

It is also insisted by the defendant the brewing company, that the statements and declarations of Dennerty, the superintendent of the ice machine company, were improperly admitted in evidence. The testimony to which this objection applies is that of the witness Stith, that he had heard Dennerty tell the man who built the tank and brought it to the brewery, to put it where the brewing company told him to put it, and to Dennerty's own testimony, that he told Heim that the supports were not strong enough to sustain the weight of the tank. In respect of the latter it is clearly competent against both defendants, as tending to show that each, prior to the erection of the tank, had notice of the insufficiency of the truss to sustain the weight to which it was to be subjected. The testimony of Stith was clearly competent as against the ice machine company. Dennerty was its superintendent in charge of the work, and his direction was the direction of his company. If incompetent as against the brewing company, the rule would be, that it must be admitted against the defendant in respect of whom it is competent, and its use and application limited by proper instructions. If the testimony was proper for any purpose, its admission was not error. The

plaintiff here sues in a representative capacity, and the defendants, if natural persons, would have been incompetent to testify as witnesses in the cause.    The brewing company was a corporation, and Heim, being its president and a stockholder therein, was interested, and therefore incompetent to testify generally on behalf of the corporation, when called adversely to the plaintiff.    At common law, a stockholder, being interested in the event of the litigation, was not allowed to testify generally in favor of the corporation.    *Thrasher* v. *Pike County Railroad Co.* 25 Ill. 393.

It is urged that the court erred in refusing to allow the defendant the brewing company to prove its directions to its foreman to build a sufficient truss.    This is not error of which that company can complain.    Its foreman did afterwards testify, without objection, to the directions given him.    But if this was not so, the master is liable for the acts of his servant within the scope of his employment.    The act of the servant in providing the structure, was, in law, that of his employer, and the servant's failure to obey instructions will not exonerate the master.    *Chicago and Northwestern Ry. Co.* v. *Swett, Admr.* 45 Ill. 197 ; Wood on Master and Servant, 860 ; Beach on Contributory Negligence, sec. 130.; Wharton on Negligence, sec. 232, note ; Patterson on Railway Accidents, 329, 330.

We have carefully considered the several points made by counsel, and are of opinion that there is in this record no error requiring a reversal of the judgment of the Appellate Court, and it will accordingly be affirmed.

*Judgment affirmed.*