Argued 28 Feb., decided 17 April, rehearing denied 22 May, 1906.

### STRAUHAL *v.* ASIATIC STEAMSHIP CO.

85 Pac. 230.

TORTS—LIABILITY OF JOINT WRONGDOERS.

1. An action for tort may be brought against the wrongdoers either jointly or severally, independent of contract.

AMENDMENT—NEW CAUSE OF ACTION.

2. In an action for damages to the person alleged to have been caused by defendants jointly, an amendment alleging the employment of the person injured by one of the defendants alone, does not change the cause of action, it appearing from other allegations that the additional defendant owed the duty of not increasing the hazard of the injured person while in the performance of his duty.

EVIDENCE CONSIDERED.

3. The evidence shows negligence by the Oregon Round Lumber Co. and the Portland & Asiatic Steamship Co., but not by the Oregon Railroad & Navigation Co. and a nonsuit was properly granted as to the latter.

JOINT LIABILITY FOR CONCURRENT NEGLIGENCE.*

4. This is an example of a proper application of the rule that where an injury results from the concurring negligence of two or more persons, though acting separately, either or all are liable; viz: a barge owner having let it in an unseaworthy condition, retaining supervision over it, and allowed it to become waterlogged, and having sent deceased to work at the pumps, knowing the situation to be dangerous, but without warning

---

*NOTE.—With the case of *Village of Carterville* v. *Cook,* 4 L. R. A. 721, 16 Am. St. Rep. 250-257, are notes on Liability for Injuries in Case of Concurrent Negligence of Separate Parties. See, also, notes to *Jacksonville, T. & K. W. Ry. Co.* v. *Peninsular Land, T. & Mfg. Co.* 17 L. R. A. 33, 35; *Wisconsin Cent. R. Co.* v. *Ross,* 34 Am. St. Rep. 49, 56, and *City Electric St. Ry. Co.* v. *Conery,* 54 Am. St. Rep. 262, 266.

With the case of *Abb* v. *Northern Pac. Ry. Co.* 92 Am. St. Rep. 872-888, 54 L. R. A. 293-308, are monographs, Release of One Joint Tort-Feasor as Affecting the Liability of the others.                                    REPORTER.

him, is jointly liable in damages for his death by the capsizing of the barge with the lessee who improperly loaded and used such barge: *Smith v. Day,* 39 Or. 531, distinguished.

MASTER AND SERVANT—EVIDENCE OF ASSUMPTION OF RISK.

5. In an action for damages for wrongfully causing the death of one who was drowned by the capsizing of a barge on which he was at work under the direction and supervision of the owner, deceased being wholly inexperienced in water craft work, and not having been at all warned of the risk from the dangerous condition of the barge, the fact that stevedores working on the same barge were apprehensive of a disaster, and mentioned it in his hearing, is not sufficient to charge deceased with having assumed the risk of the employment, for it does not show that he knew the danger or the actual condition of the barge.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by B. D. Strauhal, as administrator of the estate of Otto Pannier, deceased, against the Oregon Railroad & Navigation Co., the Oregon Round Lumber Co., and the Portland & Asiatic Steamship Co., jointly, to recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendants. The complaint, after alleging the death of Pannier, the appointment of plaintiff as his administrator, and the incorporation of the several defendants, avers that between the 24th and 28th days of December, 1904, the defendants were in the sole and exclusive use and possession of the river barge Monarch, which they were using in coaling river crafts of the Oregon Railroad & Navigation Co., and the steamship Arabia, belonging to the steamship company; that they carelessly and negligently loaded upon the barge a large amount of coal in excess of what it could safely carry in its then condition, and caused and permitted such coal to be loaded thereon in an improper manner so as to strain and weaken the barge, and render it unsafe; that while it was in such unsafe condition the defendants caused it to be taken to the Arabia and proceeded in a careless and negligent manner to unload and remove the coal therefrom, by reason of which the barge filled with water, capsized and the plaintiff's intestate, who was working thereon, drowned; that the barge was old, decayed and weak, and not sound nor safe for the use to which it was being put; that after it had been taken alongside the

Arabia, the deceased was employed by the defendants to assist in pumping the water from it and was so engaged at the time of the accident; that he was not accustomed to working on barges and had no knowledge or intimation that the barge in question was unseaworthy or had been improperly loaded or was then being negligently or unskillfully unloaded, or that there was any particular danger in his employment; that the place where he was put to work was one of extreme danger and known to be such to the defendants, notwithstanding which they neglected to inform him thereof.

The defendants answered separately. The Portland & Asiatic Steamship Co. alleged that at the times mentioned in the complaint it leased of the defendant, the Oregon Round Lumber Co., for the purpose of transporting coal to the steamship Arabia, then lying in the harbor, the barge Monarch, in charge of a barge master whose duty it was to superintend the loading and unloading thereof, to operate the pumps and to keep the barge free from water; that the barge was properly loaded and towed alongside the Arabia, but being in an unseaworthy condition, was taking water rapidly; and that the lumber company employed the deceased to operate the hand pump thereon, and while so engaged it capsized without any fault or negligence of the answering defendant. The Oregon Round Lumber Co. denied the allegations of the complaint and pleaded that at the time it rented the barge to the defendants, the Oregon Railroad & Navigation Co. and the Portland & Asiatic Steamship Co., it was in good seaworthy condition; that its codefendants had the sole and exclusive charge and management thereof and of its employee in charge, and so improperly and negligently loaded and operated the barge that it was greatly strained and weakened and caused to take water faster than it could be removed by the pumps; that the deceased was employed by it to pump water from the barge with knowledge of its weakened condition and that it was liable to capsize at any time and therefore assumed the risk incident to such employment. The Oregon Railroad & Navigation Co. denied the material allegations of the complaint and for an affirmative

defense pleaded substantially the same facts as are set up by its codefendant, the steamship company. Upon the issues thus tendered, the cause went to trial before the court and a jury.

The plaintiff gave testimony tending to show that on December 24, 1904, Capt. Conway, superintendent of water lines of the Oregon Railroad & Navigation Co. and the Portland & Asiatic Steamship Co., chartered of the defendant the Oregon Round Lumber Co. the barge in question for use in coaling the steamship Arabia then in port and belonging to the steamship company; that the barge was what is known as a "model" barge, and was equipped with a steam siphon and hand pump for use in removing the water; that at the time the barge was hired Conway was informed that he would have to be careful in loading and unloading it or it would open up and take water, and at his request the lumber company sent a man along as barge master, whose duty it was to report to his employer if the barge was not handled properly and to see that it was safely moored and kept free from water. The barge was taken by the lessee to the Albina Dock, and from 120 to 130 tons of coal loaded on the forward deck by the employees of the steamship company, on the 24th. The 25th and 26th being holidays, no work was done on either of those days, but on the morning of the 27th the loading was resumed and completed about noon of the 28th. During the morning of the 28th the barge master observed that it was taking water faster than it could be pumped out and about 11 o'clock attempted to reach the office of the lumber company by telephone to advise its officers of the condition of the barge, but was unable to do so. About noon on the 28th, and while the barge master was at his lunch, the barge was, by direction of the steamship company, towed from the coal bunkers to the Arabia and made fast. At this time tnere was a large quantity of water in the hold and it was taking water freely. When the barge master returned from his lunch he noticed a considerable list to port and that the barge was in a dangerous condition, and thereupon telephoned as soon as he could to the office of the lumber company, and O'Reilly, the superintendent, responded to the call and reached

the barge between 3 and 4 o'clock in the afternoon. At that time it was in a critical condition. It had several feet of water in the hold and was leaking badly and the stevedores had taken from 25 to 30 tons of coal from one corner and as a consequence it had listed so that the water was washing the deck on the off-shore side and midships. O'Reilly objected to the manner in which the barge was being unloaded, and in consequence thereof the stevedores commenced taking coal from the opposite side and the load was so shifted as to put the barge on an even keel, but the water was gaining on the pumps and O'Reilly telephoned for a steamer to assist in pumping. About this time, and while the barge was in this condition, he noticed the deceased standing on the wharf and asked him if he wanted to work, and being answered in the affirmative, O'Reilly directed him to report to the barge master, who put him to work at the hand pump on the forward deck. He worked there for about 45 minutes when the barge suddenly turned over, throwing him into the water and drowning him.

The deceased, so far as the evidence shows, had no experience in working on water crafts and was not informed or advised by O'Reilly, who hired him, or the barge master, who put him to work, or any one else, that the barge was in danger of turning over, or that there was any unusual risk or hazard in working thereon. The danger seems, however, to have been apprehended by the stevedores who were unloading and was several times mentioned by them in the hearing of the deceased, but it does not appear that he understood the purport of their remarks or was conscious of the danger. At the close of the plaintiff's testimony, he was permitted to amend his complaint so as to conform to the evidence, by changing the allegation that the deceased was employed by the defendants jointly to an averment of his employment by the defendant, the Oregon Round Lumber Co., alone. The defendants thereupon separately moved for nonsuits, which motions were sustained by the court, and the plaintiff appeals.                    REVERSED.

For appellant there was a brief with oral arguments by *Mr. Enoch Burnham Dufur* and *Mr. Hayward Hamilton Riddell*.

For respondent Oregon Round Lumber Co. there was a brief over the name of *Hogue & Wilbur,* with an oral argument by *Mr. Ralph William Wilbur.*

For respondents Oregon Railroad & Navigation Co. and Portland & Asiatic Steamship Co. there was a brief over the names of *W. W. Cotton, H. F. Conner* and *A. C. Spencer,* with an oral argument by *Mr. Arthur Champlin Spencer.*

Mr. Chief Justice Bean delivered the opinion.

1. It was not error to allow the amendment to the complaint. It did not substantially change the cause of action. The action is not based on contract, but on tort, alleged to have been caused by the defendants jointly, and in such case a right of action exists against any or all of the wrongdoers, independent of contract: *Wabash, etc., Ry. Co.* v. *Shacklet,* 105 Ill. 364 (44 Am. Rep. 791).

2. The allegation of employment was merely to show that deceased was rightfully on the barge at the time of the accident and that the lumber company, his employer, owed him the duty of providing a reasonably safe place in which to work, or of warning him of the danger incident to the employment, and the steamship company, the duty of not increasing the hazard of his employment by its negligence.

3. There is no evidence in the record connecting the defendant the Oregon Railroad & Navigation Co. in any manner whatever with the accident which resulted in the death of plaintiff's intestate, and therefore its motion for nonsuit was properly allowed. It is true Capt. Conway, who hired the barge, was the superintendent of water lines of both the Oregon Railroad & Navigation Co. and the steamship company, and it is possible, although not clearly shown from the testimony, that the coal was taken from the bunkers of the former company, but this was not sufficient to make it liable for the condition of the barge or the manner in which it was loaded or discharged. The barge belonged to the defendant lumber company, was in the joint possession of it and the defendant steamship company, and was loaded by the latter either in its own way or as directed

by the barge master, a point upon which there is some conflict in the testimony, and there is evidence tending to show that it was not seaworthy and was improperly loaded. The witness Seaman, who had known the barge for six or eight months prior to the accident, was master of her for a time about the 1st of December, and who inspected her at the request of the officers of the lumber company, testified that she was an old craft; that her keel was broken in one place, and appeared to be rotten in others; that the two main braces had been pulled from the sides for about three inches and in his opinion the barge was not seaworthy for more than 300 tons, and he furthermore testified that he saw her the day of the accident after she had been loaded and that the load was not evenly distributed and so put an unusual strain on the barge. Dewyl, another witness, who had known the barge for 10 years or more and was foreman of her for some time, testified that he saw her as she was being towed from the dock to the Arabia and that she was loaded too heavily amidships; that such a load had a tendency to loosen the hog chains, open the seams and cause her to take water. When the barge was made fast to the Arabia, the water was coming in faster than it could be removed by the pumps and there was a considerable list to port. The steamship company, however, commenced discharging the coal from the starboard bow, which necessarily increased the list. When O'Reilly reached the barge he complained of the manner in which it was being discharged, and the foreman gave directions to have the coal removed as evenly as could be done and it was shifted so as to put the barge on an even keel, but by that time there was such a quantity of water in her that it was too late to keep her from capsizing.

4. There was evidence, therefore, tending to show that the accident by which the deceased lost his life was caused by the concurrent negligence of the steamship in loading and discharging the barge and of the lumber company in furnishing an unseaworthy barge, and in not keeping her free from water and in sending the deceased to work at a place known to it, but unknown to him, to be dangerous, without warning him of the danger. And this brings the case within the established rule

that where an injury is the result of the concurring negligence of two or more persons, although acting separately, either or all are liable: *Smith* v. *Rines,* 2 Sumn. 338 (Fed. Cas. No. 13,100) ; *Pirie* v. *Tvedt,* 115 U. S. 43 (5 Sup. Ct. 1034, 1161, 29 L. Ed. 331) ; *Wabash, etc., Ry. Co.* v. *Shacklet,* 105 Ill. 364 (44 Am. Rep. 791) ; *Consolidated Ice Mach. Co.* v. *Keifer,* 134 Ill. 481 (25 N. E. 799, 10 L. R. A. 696, 23 Am. St. Rep. 688) ; *Hawkesworth* v. *Thompson,* 98 Mass. 77 (93 Am. Dec. 137) ; *Cuddy* v. *Horn,* 46 Mich. 596 (10 N. W. 32, 41 Am. Rep. 178) ; *Slater* v. *Mersereau,* 64 N. Y. 138; *Brown* v. *Coxe* (C. C.), 75 Fed. 689 ; *Flaherty* v. *Minneapolis & St. L. Ry. Co.* 39 Minn. 328 (10 N. W. 160, 1 L. R. A. 680, 12 Am. St. Rep. 654) ; *Village of Carterville* v. *Cook,* 16 Am. St. Rep. 250, notes; *Gulf, Colo. & Santa Fe. Ry. Co.* v. *Bell,* 8 Am. Neg. Rep. 159, 164, notes.

In *Smith* v. *Rines,* 2 Sumn. 338 (Fed. Cas. No. 13,100), Mr. Justice STORY says with reference to actions of this character: "Nothing is more clear, than the right of the plaintiff to bring an action of this sort against all the wrongdoers, or against any one or more of them, at his election. There is no principle, upon which the defendant has a right, in any court of justice, to say, that the action shall be several, and not joint; and thus to take away the right of election, which the plaintiff has by law, to make it joint." And in *Pirie* v. *Tvedt,* 115 U. S. 43 (5 Sup. Ct. 1034, 29 L. Ed. 331), Mr. Chief Justice WAITE says: "A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way." Judge SEAMAN says in *Brown* v. *Coxe,* 75 Fed. 689, that the creation of a joint liability in tort does not depend upon proof that the same act of wrongdoing was participated in by both tort-feasors and that they were in concert and had a common intent or were engaged in a joint undertaking: "But the rule under which parties become jointly liable as tort-feasors extends beyond acts or omissions which are designedly co-operative, and beyond any relation between the wrongdoers. If their acts of negligence, however separate and distinct in themselves, are concurrent in producing the injury, their liability is joint as well as several. Each becomes

liable because of his neglect of duty, and they are jointly liable for the single injury inflicted because the acts or omissions of both have contributed to it." *Smith* v. *Day,* 39 Or. 531 (64 Pac. 812, 65 Pac. 1055), is not in conflict with this doctrine. In that case the defendants were acting independently of each other, without concert or common purpose, and the injury was not due to their concurring negligence, although it may have been a common result to which the act of each contributed. To make tort-feasors liable jointly there must be some sort of community in the wrongdoing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together or in concert if their concurring negligence occasions the injury. "Where the negligence of two or more persons directly concurs to produce an injury to another," holds the Supreme Court of Illinois in *Consolidated Ice Mach. Co.* v. *Keifer,* 134 Ill. 481 (10 L. R. A. 696, 23 Am. St. Rep. 688, 25 N. E. 799), "although one may have undertaken one part of the particular work and another another part, and the negligence occurs in the performance of each of the several parts of the work which directly contributes to produce the injury, all will be liable." We are of the opinion, therefore, that the action can be maintained against the lumber company and the steamship company jointly. In such action a plaintiff may recover, if at all, against both or either of the defendants as the proof may warrant: *Thompkins* v. *Clay St. Ry. Co.,* 66 Cal. 163 (4 Pac. 1165) ; *Winslow* v. *Newlan,* 45 Ill. 145; *Carpenter* v. *Lee,* 5 Yerg. (Tenn.) 265.

5. It is contended that the deceased assumed the increased risk due to the condition of the barge at the time he went to work thereon, but there is no proof that he was conscious of the danger, or had knowledge of the fact.

The judgment is reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.        Reversed.