Línea Borinquen, Inc., Plaintiff and Appellant-Appellee, v. Fajardo Development Co., Defendant and Appellee, and American Railroad Co. of Porto Rico, Defendant and Appellee-Appellant.

No. 7271.   Argued June 2, 1937.—Decided June 7, 1938.

*Susoni & Defendini* for appellant-appellee. *Mariano Acosta Velarde* for appellee-appellant. *Jaime Sifre, Jr.,* and *A. Ortiz Toro* for the Fajardo Development Co.

MR. JUSTICE WOLF delivered the opinion of the court.

Complainant Línea Borinquen, Inc., brought suit against the Fajardo Development Co. and the American Railroad Co. of Porto Rico to recover damages in the sum of $1,914.40. These damages were alleged to proceed from a collision between a bus licensed number P-1385, belonging to the complainant, and a train belonging to the American Railroad Co. of Porto Rico travelling over tracks owned by the Fajardo Development Co.

The District Court found that the evidence proved that the Fajardo Development Co. was the owner of the railroad between Carolina and Naguabo; that on the 30th of December, 1931, the American Railroad Co. of Porto Rico entered into a contract with the said Fajardo Development Co., which was later approved by the Public Service Commission on April 6, 1932; that by this contract each of the companies agreed to allow the other the use of its tracks for the transit of their respective trains; that the accident occurred on September 17, 1932; that the American Railroad Co., as owner and operator of engine No. 87, was responsible for the accident, due to the negligence of Angel Sánchez, the engineer of said locomotive, and to the negligence of the gate-keeper, who was not present at that moment; in not having hung the chains across the road, nor made any signal with a red flag, as was the custom, in order to stop the traffic on the road at the grade-crossing; that the chauffeur reduced speed before arriving at the grade-crossing and not hearing any notice of the approximation of the engine crossed the track and was struck by the engine; that there was no evidence of contributory negligence on the part of the chauffeur; that

the engine struck the left side of the bus and threw it against a post of the electric light, thereby damaging it on both sides; that the bus had been sold by Pedro A. Pizá under a conditional sale contract to the Línea Borinquen, Inc., represented by A. S. Robles, for the sum of $1,630 in November, 1931; that the body of said bus after the accident was entirely destroyed and that the value of said body was $600, and that the damages caused to the chassis amounted to $177.40.

The court found that complainant had not sufficiently proved the daily income derived from said bus nor the operation expenses incurred, such as gasoline, oil and salary of the chauffeur, and therefore did not grant any damages for the loss of the services of the bus during the 94 days.

On these findings the district court dismissed the complaint in regard to the Fajardo Development Co. and found for complainant against the American Railroad Co. of Porto Rico and set the damages in the sum of $777.40, without costs.

The Línea Borinquen, Inc., filed a motion to reconsider the judgment, alleging that as the court had found that the accident was in part due to the negligence of the gatekeeper, who was an employee of the Fajardo Development Co., the judgment should have been given jointly against the American Railroad Co. of Porto Rico and the Fajardo Development Co. The complainant also asked the court to reconsider its judgment with regard to the costs, alleging that the defendants had been extremely obstinate in their efforts to evade their responsibilities in this case and that therefore plaintiff should have been granted costs. The court overruled the motion to reconsider on the 26th of October 1935, and on the same date the American Railroad Co. of Porto Rico filed its notice of appeal against the judgment. On the 7th of May, 1936, the American Railroad Co. of Porto Rico and the Línea Borinquen, Inc., entered into a stipulation whereby they agreed: (1) that the complainant, Línea Borinquen, Inc., use, for the purpose of perfecting its appeal, the transcript of the evidence and the record filed by the American Railroad Co.

of Porto Rico; (2) that the appeal of the complainant and of the defendant American Railroad Co. of Porto Rico be heard as one; (3) that the notice of appeal filed by the complainant in the District Court of San Juan be added to the record filed by the American Railroad Co. of Porto Rico (a copy of said notice of appeal, certified by the Secretary of the District Court of San Juan, was attached and made a part of said stipulation); and (4) that complainant's appeal be perfected in this case from the date of the approval of said stipulation. This stipulation was approved by this court on the same day.

The Fajardo Development Co., in its brief, alleges that this court has no jurisdiction, for two reasons: (1) because the judgment of the District Court of San Juan was final before the Línea Borinquen, Inc., filed its appeal, and (2) because the Línea Borinquen, Inc., should have appealed from the final resolution of the lower court.

In arguing its first point, the Fajardo Development Co., although recognizing that this court has followed the precedent established by the Circuit Court of Boston in the cases of *Saurí* v. *Saurí*, 45 F. (2d) 90 and *Díaz* v. *Pérez*, 54 F. (2d) 588, holding that a motion to reconsider suspends the thirty-day term to appeal, alleges that in this specific case the motion to reconsider was merely directed against certain aspects of the judgment and not to the judgment as a whole, and that, therefore, said rule is not applicable. In a later case than those cited by the appellee (*Wayne Gas Co.* v. *Owens-Illinois Co.*, 300 U. S. 131), the Supreme Court of the United States held that a rehearing, even though the court reaffirms its former action and refuses to enter a decree different from the original one, is appealable and the time for appeal runs from its entry. Appellee's contention that said rehearing must be directed against the judgment as a whole, and not merely some part of it, is untenable.

Regarding the second point it is evident that the Línea Borinquen, Inc., appealed specifically from the judgment of

September 23, 1935, and under the foregoing reasoning no other appeal was necessary.

Even if the Fajardo Development Company.'s contentions were correct, this would have very little effect on the appeal, since the American Railroad Co. of Porto Rico took its appeal from the judgment of the district court and alleged, besides others of its own, more or less the same errors as the Línea Borinquen, Inc.

The American Railroad Co. of Porto Rico alleges four errors in the district court as follows:

1. That the District Court of San Juan incurred in manifest error in handing down judgment against the American Railroad Co. of Porto Rico on the basis that Adolfo Torréns, the gate-keeper, was not at the time of the accident at the grade-crossing and did not hang the chains across the road or make any signals with a red flag.

2. That the District Court of San Juan was in error in finding that the negligence of the gate-keeper Adolfo Torréns, employee of the Fajardo Development Co., could be attributed to the American Railroad Co. of Porto Rico.

3. The district court was in error in handing down judgment for complainant against defendant The American Railroad Co. of Porto Rico, inasmuch as the preponderance of the evidence proved that the American Railroad Co. of Porto Rico was not guilty of any negligence whatsoever.

4. That the district court was in error in handing down judgment against defendant American Railroad Co. of Porto Rico because according to the weight and preponderance of the evidence the complainant was guilty of contributory negligence, this being the proximate and immediate cause of the accident.

The Línea Borinquen, Inc., alleges three errors in the district court as follows:

1. The District Court of San Juan was in error in sustaining that the negligence of the gate-keeper Adolfo Torréns,

employee of the Fajardo Development Co., should be attributed to the American Railroad Co. of Porto Rico exclusively.

2. That the District Court of San Juan was in error in exonerating the Fajardo Development Co. from all responsibility to the complainant and in handing down judgment only against the American Railroad Co. of Porto Rico.

3. That the District Court of San Juan was in error in not granting complainant the costs, expenses and attorney's fees.

The first and second errors alleged by the American Railroad Co. of Porto Rico and the first and second errors alleged by the Línea Borinquen, Inc., all have to do more or less with one question, or at least with various ramifications of the same question. The American Railroad Company's first error is based on the finding of the district court that the gate-keeper was not at the grade-crossing at the time of the accident and did not hang the chains across the road or make any signal to warn traffic. As to the question of whether or not this finding is correct, this court will not consider it further than to say that sufficient evidence was adduced to sustain said holding.

In its second error the American Railroad Co. of Porto Rico alleges that the negligence of the gate-keeper as found by the district court could not be attributed to the American Railroad Co. The Línea Borinquen, Inc., on the contrary, alleges that the district court erred in attributing said negligence of the gate-keeper exclusively to the American Railroad Co. of Porto Rico, and in its second error alleges that the Fajardo Development Co. should not have been exonerated from all responsibilities, since the district court had found negligence in its employee, to wit, the watchman.

According to paragraph q, section 3, of chapter II of Act No. 70 of 1917 (Session Laws, Vol. II, pages 432, 448), the railroad Company is obliged to maintain "chains, gates, or other suitable protective devices at all grade crossings of insular public roads."

In 52 Corpus Juris 202, the rule is stated as follows:

"By some statutes the railroad company is required to provide flagmen or gates at certain crossings, and the failure to comply with such statute is negligence *per se.*"

Therefore, in this case there can be no doubt of the negligence of the flagman and the question now arises as to whether the owner of the road only is liable as alleged by the American Railroad Co., or whether the American Railroad Company only is liable as held by the district court, or whether both companies are liable as alleged by the Línea Borinquen, Inc.

In regard to this question, in 51 Corpus Juris 1104, we find the rule stated as follows:

"A railroad company using the road of another is held to the same degree of care in its use as if it owned the road. It is bound, so far as the question of liability for negligence is concerned, by the same law as binds the owner.

"*     *     *     *     *     *     *     *

"A railroad company using the road of another is not liable for the injuries due solely to the negligence of the servants of the company owning the road in the operation of the trains of that company, but will be liable for injuries incident to the operation of its own trains due to negligence on the part of servants in the employ of the company owning the road, such as gatemen or flagmen at crossings, whose services it adopts and relies upon instead of employing others of its own for such duties."

The principle is specially supported by the citations under note 95 to the effect that a railroad company using the road of another must maintain flagmen at a crossing whenever a failure to do so would be actionable negligence on the part of the company owning the road. *McGrath* v. *New York Central etc. Ry. Co.,* 63 N. Y. 522. See Syllabus to *Webb* v. *Portland etc. Ry Co.,* 57 Me. 117, in 41 Cent. Dig., Railroads, par. 826, p. 2487.

And in 51 Corpus Juris 1110, "where the concurrent negligence of two railroad companies or of the railroad company

and another person contributed to an injury, they are jointly liable, and may be sued jointly, or, it has been held, may be sued severally, and this is the rule although the negligence was not by preconcert, and the parties acted independently of each other, and although there was no neglect of the same common duty; nor is it material that one of the defendants owed to plaintiff higher degree of care than the other. Where an injury is caused by a train which at the time is under the joint control of servants of two or more railroad companies, or of servants employed by them jointly, they are jointly and severally liable and this is the rule where the train is being operated by one company over the tracks of another.'' See also *Consolidated Ice Machine Co.* v. *Keifer,* 134 Ill. 481; 10 L.R.A. 696; 45 C. J. 896, and especially note 15.

In view of this, it would seem that appellant Línea Borinquen, Inc., is correct in its contention that both companies are jointly liable and this without considering whether or not there was any negligence on the part of the American Railroad Company in the management of its train.

The American Railroad Co. of Porto Rico alleges error in the district court in holding against them, inasmuch as the preponderance of the evidence proved that the American Railroad Co. of Porto Rico was not guilty of any negligence whatsoever. As already stated during the discussion of the first and second errors of the American Railroad Co., the American Railroad Co. was jointly liable for the negligence of the Fajardo Development Co.. The district court, in reference to the negligence of the American Railroad Co. of Porto Rico, found as follows:

"The accident occurred, as alleged in the complaint, on the 17th of September, 1932, and the American Railroad Company of Porto Rico was liable for the same as owner and operator of freight and passenger train No. 87, which caused the damage by reason of the negligence of its engineer Angel Sánchez. The chauffeur reduced the speed of his vehicle before reaching the grade-crossing, and not hearing any warning from the approaching train, started to cross the tracks, and was struck by the train."

There was evidence tending to show that the locomotive failed to sound a bell or blow a whistle. The appellant, American Railroad Co. of Porto Rico, does not convince us that the court did not have a right to believe by a preponderance of the evidence that it was negligent. The judgment, however, supposing the error, could still be affirmed by reason of the negligence of the flagman.

In its fourth error the American Railroad Co. alleges that according to the weight and preponderance of the evidence the Línea Borinquen, Inc., was guilty of contributory negligence, which negligence was the proximate and immediate cause of the accident and that therefore judgment should not have been given against the defendant American Railroad Co. of Porto Rico.

The American Railroad Co. bases its allegation of contributory negligence on the fact that the driver of the bus did not come to a complete halt before crossing the grade-crossing. In *García* v. *American Railroad Co. of P. R.,* 45 P.R.R. 738, 745–746, the following is stated:

"In our opinion the *Goodman* case should not be interpreted in the sense of imposing on the driver of a motor vehicle the duty to stop always upon reaching a railroad track. It does not seem reasonable to require invariably, in all cases, that the driver should stop completely before going upon the tracks. The general jurisprudence does not sanction such rule. It has been said by a number of courts that a driver of a motor vehicle who intends to cross the tracks of a railroad must stop, look, and listen, at a place from which he can see over the tracks, in order to ascertain whether a train is coming. The prevailing rule, however, is that no such duty is invariably imposed on the traveler as a matter of law. The controverted questions are not always the same, the facts change, and in order to judge the conduct of a driver who has not stopped his vehicle, the circumstances attending his reaching the crossing, his ignorance or knowledge of the situation of the track, and the reliance he may have placed on his opportunity for seeing and hearing, in either direction along the track, must be considered. We have heretofore said that each case has its peculiarities, its characteristic features, its special mark, its own physiognomy, and that it would be no easy task to

do justice if in order to determine what facts constitute ordinary care or negligence we had to follow fixed and invariable rules. *Rivera* v. *Central Pasto Viejo, Inc.*, 44 P.R.R. 236, 258. To determine whether or not there was negligence in a particular case we must ask ourselves what a reasonably prudent person would have done in similar circumstances. We must not expect from human nature more than what it can humanly give, and it does not seem reasonable to require precautions which are not adopted in the ordinary course of human conduct, no matter how justified they be when there is a special reason for their necessity, in caring for our own safety and that of others.''

Upholding this same principle in *López* v. *American Railroad Co.*, 50 P.R.R. 1, the court cites a recent decision of the Supreme Court of the United States holding the same:

"The Supreme Court of the United States, in an opinion delivered subsequently, on April 2, 1934, also referring to the *Goodman* case, said among other things, the following:

" 'There is need at this state to clear the ground of brushwood that may obscure the point at issue. We do not now inquire into the existence of a duty to stop, disconnected from a duty to get out and reconnoitre. The inquiry, if pursued, would lead us into the thickets of conflicting judgments. Some courts apply what is often spoken of as the Pennsylvania rule, and impose an unyielding duty to stop, as well as to look and listen, no matter how clear the crossing or the tracks on either side. (Citations.) Other courts, the majority, adopt the rule that the traveler must look and listen, but that the existence of a duty to stop depends upon the circumstances, and hence generally, even if not invariably, upon the judgment of the jury. (Citation.) The subject has been less considered in this court, but in none of its opinions is there a suggestion that at any and every crossing the duty to stop is absolute, irrespective of the danger. Not even in *B. & O. R. Co.* v. *Goodman, supra,* which goes farther than the earlier cases, is there support for such a rule. To the contrary, the opinion makes it clear that the duty is conditioned upon the presence of impediments whereby sight and hearing become inadequate for the traveler's protection.' *Pokora* v. *Wabash Ry. Co.*, 292 U. S. 98, 102–103.

"The Supreme Court goes on to other considerations and states that the opinion in the *Goodman* case has given rise to confusion in

the federal courts, having received hesitating support in the state courts, and concludes by saying: 'We limit it accordingly.' ''

In regard to this same question, in *Ruberté* v. *American Railroad Co.*, 52 P.R.R. 157, 159, this court held as follows:

''A person traveling along a highway in a motor vehicle is not ordinarily obliged to take the same care when passing over one of these tracks as he would in crossing the regular tracks of the American Railroad Company. Travelers along the highroad are always bound to take a certain amount of care, but we do not think that they are bound to stop, look, and listen every time they approach a track, especially one not belonging to a public service corporation, apt to use its tracks at any moment. The intersection was a grade crossing. In other words, that travelers on the highroad, and of course those coming from Ponce, could see straight ahead for quite a distance.''

In view of this there is no merit in the American Railroad Company's assignment that the district court erred in holding that the complainant Línea Borinquen, Inc., was not guilty of contributory negligence.

In its third error the Línea Borinquen, Inc., alleges that the district court erred in not granting damages for the costs, expenses and attorney's fees in the case. In regard to the costs, it would seem that the district court acted within its discretion. Article 327 of the Code of Civil Procedure gives the district court discretion in granting costs and bases this discretion on the degree of blame of the defendant. In this case complainant sued for the amount of $1,914.40 and was awarded judgment in the sum of $777.40. In other words, the damages awarded were less than a half of those prayed for.

In *Martínez* v. *Padilla*, 19 P.R.R. 555, 558, in passing on this question, this court states as follows:

''The other requisites which the law exacts for a judgment for costs and attorney's fees is that in the discretional opinion of the court the party against whom judgment is rendered is blameworthy.

''The blame to which the law refers is equivalent to the temerity or bad faith necessary under our former laws for the imposition of

costs. All these terms are synonymous and, as may be seen therefrom, indicate a lack of cause on the part of the plaintiff to bring and maintain an action and a lack of right on the part of the defendant to defend an action. Hence in that sense a person is blameworthy, temerarious, or acting in bad faith when there is nothing to justify the maintenance or defense of his action. Consequently, according to the uniform jurisprudence of the Supreme Court of Spain, a defendant cannot be deemed guilty of temerity and ordered to pay costs when any part of the complaint is denied or when his defense is just, even though only in part. See judgment of March 14 and May 4, 1893.''

In *Succn. of Del Toro* v. *Zambrana*, 27 P.R.R. 445, 455, the previous holding was sustained, as follows:

''With respect to the attorney fees, we do not see that the lower court abused its discretion in not imposing their payment upon the defendant, considering the difference between what was prayed for in the complaint and what was allowed by the judgment. *Martínez* v. *Padilla*, 19 P.R.R. 555.''

It appears, therefore, that the district court was not in error in not granting costs.

The judgment of the district court should be reversed in so far as it exonerates the Fajardo Development Co., and in all other respects affirmed.